# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number:  00-1804-CIV-GOLD
Magistrate Judge Simonton

BURGER KING CORPORATION,

      Plaintiff,

vs.

ASHLAND EQUITIES, INC.,
REINOLD T. BELLE, and
ROBERT E. CLARKE,

      Defendants.

_____/



## PLAINTIFF'S RESPONSE AND SUPPORTING MEMORANDUM
## OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Burger King Corporation ("BKC"), pursuant to S.D. Fla. L.R. 7.1 C., responds to Defendants' motion to dismiss for lack of service of process (the "Motion"), requests this Honorable Court to deny the Motion, and as good cause therefor states:

### INTRODUCTION

1.     Defendants' disingenuous motion depends upon their dishonest attempt to deny their agreement that Defendants' counsel was authorized to accept service; it is undisputed that BKC timely served Defendants' counsel with the Complaint. Further, Defendants' Motion illegitimately seeks to profit from the parties' agreement that this matter would not proceed during a period that BKC was led to believe constituted good faith settlement negotiations.  Fortunately, the law does not permit Defendants to succeed in their duplicitous conduct. Instead, existing case law and the applicable Rule of Civil Procedure require denial of the Motion because (1) BKC served Defendants in accordance with agreement of counsel, and (2) the existence of good faith settlement negotiations



constitutes grounds under the applicable rule for extending the time for service of process. Further, this Court should be aware that BKC has now taken the additional step of personally serving Defendants with process and, at a minimum, is authorized to deem such service acceptable *nunc pro tunc*. Accordingly, BKC respectfully requests that this Court deny Defendants' Motion.

## FACTS

2.      BKC filed its Complaint on May 24, 2000. Federal Rule of Civil Procedure 4, therefore, ordinarily required BKC to serve Defendants with process on or before September 21, 2000.

3.      Defendants' claim that they were not served is disingenuous. Defendants are fully aware that their Kentucky counsel received the Complaint pursuant to their agreement to allow him to accept service. Defendants, apparently, now attempt to deny this agreement by asking this Court to validate their broken promise by dismissing the Complaint.

4.      The parties' agreement to delay service stemmed from on-going settlement talks. Upon filing of its Complaint, Defendants immediately began attempting to negotiate a settlement with BKC. Based upon these apparent good-faith efforts, BKC agreed to withhold from formally serving the Complaint while the parties continued their settlement negotiations. (See, Declaration of Dennis Leone, Esq. filed contemporaneously herewith and attached as Exhibit "A" ("Leone Dec.", ¶ 3).

5.      BKC's counsel contacted Defendants' Kentucky counsel on August 24, 2000 to discuss filing a Joint Status Report. (Leone Dec. ¶ 4). Understanding that the deadline for service was approaching, the undersigned also requested Defendants' Kentucky counsel to accept service of process on Defendants' behalf to avoid the cost and expense of service, as well as the traumatic experience often associated with being served by a process server which would be counterproductive

2

to on-going settlement talks. (Id.). During this call, Defendants' Kentucky counsel agreed with the spirit of the suggestion, expressed his appreciation, and informed the undersigned that he would recommend the agreement to his clients. (Id.). Defendants' Kentucky counsel promised to contact the undersigned with his clients' response shortly. (Id.). The parties, meanwhile, continued their efforts to end the litigation by settlement.

6.    After trading several phone calls, Defendants' Kentucky counsel agreed on September 21, 2000 to accept service of process on behalf of all Defendants as of that date, the last day of the 120 day period for service. (Leone Dec. ¶ 5). During the September 21, 2000 conversation, the undersigned agreed to forward file-stamped copies of the Complaint to Kentucky counsel. Pursuant to counsel's conversation, the undersigned forwarded by overnight delivery file-stamped copies of the complaint for each party on September 29, 2000 (the "Service Package"). (A true and correct copy of the cover letter to the Service Package is attached hereto as Exhibit "B"; Id.). In the spirit of settlement, BKC agreed in the cover letter to a very generous enlargement of time to respond to the complaint. (See, Ex. B; Id.). The parties continued their efforts to settle the matter.

7.    BKC's agreement to withhold serving the Complaint was based, in part, upon the parties on going settlement discussions. These settlement discussions are also evidenced by BKC's motion to enlarge the time to comply with this Court's Pretrial Order. (Docket Entry ("D.E.") # 6). As set forth in the motion, BKC sought an enlargement of time so the parties' could focus their efforts on settlement and could minimize costs and legal expenses. (See, D.E. # 6, p. 1). The Court granted BKC's motion. (D.E. # 7).

8.    The Scheduling Report filed by BKC further demonstrates its reliance on the parties' settlement negotiations for not effecting service of process. The Scheduling Report noted that Defendants "have not yet been served with the Complaint as the parties are focusing their efforts on

3

attempting to reach a settlement of this litigation." (D.E. # 8, p. 1). In the spirit of the parties' settlement discussions, the undersigned forwarded Defendants' Kentucky counsel the proposed Scheduling Report for his review before it was filed. (A true and correct copy of the cover letter and enclosure is attached hereto as Exhibit "C").

9.     Defendants will suffer no prejudice by this Court's denial of the Motion, and do not claim by their Motion that they will. Prejudice does not exist because Defendants received the critical document at issue, the Complaint, upon its service on counsel. Further, Defendants were almost immediately on notice of BKC's filing of a Complaint and were aware, from negotiations, that the Complaint sought damages in excess of $180,000.

10.     Finally, BKC has since served defendants Reinold T. Belle and the corporate defendant, Ashland Equities, Inc. through a process server. The proofs of service were filed contemporaneously herewith and are attached as Exhibit "D". BKC is continuing its efforts to serve defendant Robert E. Clarke.

## ARGUMENT

This Court must deny Defendants' Motion for three reasons. First, BKC served Defendants pursuant to the parties' agreement. Second, Defendants suffered no prejudice by accepting service pursuant to that agreement. Third, it is within this Court's sound discretion to allow BKC to formally complete service of process within an appropriate period of time should the Court conclude that BKC did not previously serve Defendants.

Rule 4(m), Fed.R.Civ.P., ordinarily requires a plaintiff to serve a defendant with process within 120 days of filing the complaint. The Rule further states that the Court "shall extend the time for service for an appropriate period" in the Court's discretion or upon a showing of good cause. In construing this rule, Courts routinely note that "[t]he 120 day mandate imposed by [Fed. R. Civ. P.

4(m)] was not meant to be enforced harshly or inflexibly . . . [it] was intended to be 'a useful tool for docket management, not as an instrument of oppression.'" <u>Gambino v. Village of Oakbrook</u>, 164 F.R.D. 271, 274 (M.D. Fla. 1995) (citing <u>United States v. Ayer</u>, 857 F.2d 881, 885-886 (1st Cir. 1988)). As such, dismissal of this case under the circumstances is neither warranted nor consistent with the spirit of the governing rule.

Initially, this Court must deny the Motion because Defendants received service of process. As set forth above, Defendants received a copy of the Complaint and summons by letter dated September 29, 2000. <u>See</u>, Ex. B; Leone Dec. ¶ 5. Disingenuously, Defendants claim, by letter dated October 16, 2000 and **not by their motion**, that service was not effected because Defendants' Kentucy lawyer allegedly did not receive a summons in the Service Package. (<u>See</u>, Ex. "B"). Ironically, Defendants' Kentucky counsel did not send this letter or note the alleged absence of the summonses until <u>after</u> settlement negotiations began to break down. As set forth in Exhibit "E", however, Defendants' counsel received both the summonses and the Complaint.

Second, Defendants will suffer no prejudice if their motion is denied. Defendants failed to pay BKC in excess of $180,000. BKC filed suit to recover it. Defendants knew BKC filed litigation against them for this reason almost immediately after BKC filed the Complaint. As such, Defendants hired counsel. As such, BKC copied Defendants' counsel on all correspondence between the parties. (A true and correct copy of the correspondence copying Defendants' Kentucky counsel is attached as composite Exhibit "F"). By denying the Motion based upon the parties' agreement to serve Defendants through their counsel or directing BKC to complete service of process in an appropriate time after the 120 period, Defendants will suffer no prejudice. Tellingly, Defendants do not argue that they will in the Motion.

5

Finally, this Court should provide BKC with appropriate time to serve Defendants *nunc pro tunc* if the Court finds that BKC did not "serve" Defendants within the 120 period.   Rule 4(m) clearly states that the Court "shall extend the time for service for an appropriate period" in the trial court's discretion or if "plaintiff shows good cause."   Good cause exists in this case.   As set forth in a case cited by Defendants, an extension to serve Defendants "**is mandatory**" if good cause exists. Espinoza v. United States, 52 F. 3d 838, 841 (10th Cir. 1995) (emphasis added).   In Espinoza, the Tenth Circuit additionally noted that Rule 4(m) allows "a plaintiff who has failed to show 'good cause' for a mandatory extension of time [to be] be granted a permissible extension of time within the district court's discretion."  Espinoza, 52 F. 3d at 841.[1]

In the event this Court allows Defendants' broken promise to support a finding that BKC did not "serve" Defendants, good cause exists for this Court to enlarge the time for service *nunc pro tunc* apart from Defendants' agreement to accept service.    "**Good faith settlement negotiations constitute good cause for failing to serve**" a defendant.  Spengler v. Seagate Technology, 1991 WL 335996, *1 (N.D. Cal. 1991) (emphasis added).  (A copy of Spengler is attached hereto as Exhibit "G").  Here, BKC did not formally "serve" Defendants because the parties were engaged in good-faith settlement negotiations and the parties' counsel agreed it was for the best not to effectuate service in a traditional manner.   As such, the parties ultimately agreed that Defendants' Kentucky counsel would accept service by mail.  (See, Ex. B; Leone Dec. ¶ 5).

Other courts also routinely find good cause under these circumstances.   In Gambino v. Village of Oakbrook, the Middle District of Florida found "good cause" primarily because, like here, the parties were engaged in diligent and good faith settlement discussions.  Gambino, 164 F.R.D.

---

[1]      The Court should note that the Tenth Circuit did not determine whether to dismiss the case for lack of service of process in Espinoza, it simply remanded the matter for reconsideration by the trial court in light of the new good cause/permissible standard discussed.

6

at 274-275.  In Gambino, as in this case, the parties almost immediately entered settlement negotiations.  As negotiations proceeded, the 120 day period began to approach.  The plaintiff in Gambino, only 3 days before the 120 day period expired, began its efforts to effectuate service.  The Court found that this effort was reasonable under the circumstances, and that "[w]here a plaintiff made a reasonable effort to serve defendant, Congress intended that the 120 day deadline be extended." Gambino, 164 F.R.D. at 274 (citing D'Amario v. Russo, 750 F. Supp 560, 563 (Dist. R.I. 1990)).  Here, BKC's efforts to serve Defendants began 30 days before the 120 period ran, not the 3 days of Gambino.  BKC's efforts, then, were reasonable and support a finding of good cause.

Likewise, in Assad v. Liberty Chevrolet, Inc., 124 F.R.D. 31 (Dist. Ct. R.I. 1989), the court found that good faith settlement discussions constituted good cause.  In Assad, the plaintiffs did not serve a defendant until 13 days **after** the 120 day deadline because the parties were engaged in settlement negotiations.  Despite missing the deadline, the Court found that good cause existed based on the parties' settlement negotiations, and denied defendant's motion to dismiss.

Finally, the fatally flawed basis of Defendants' Motion is also evidenced by the cases cited in their Motion.  None of the cases cited by Defendants are factually or legally on point.  The principal case relied upon by Defendants, Rodriguez v. Rossotti, 1998 WL 919866 (S.D. Fla. 1998), is not remotely factually analogous.  In Rodriquez, the trial court specifically noted that plaintiff, appearing pro se, not only failed to serve defendant, but also failed to respond to defendant's motion to dismiss, and otherwise abandoned the Rodriquez case as well as four other cases on the Court's docket filed by plaintiff.  In deciding the motion, the Court specifically noted plaintiff's abandonment of the case under consideration, and dismissed on that basis as well. Rodriguez, 1998 WL 919866.

7

The other cases cited by Defendants also do not support Defendants' Motion.  <u>Wayne v. Jarvis</u>, 197 F. 3d 1098 (11th Cir. 1999), does not  mention Rule 4(m), and does not address service of process issues.  The case, instead, discusses issues of "relation back", statute of limitations, civil rights issues, and summary judgment standards.  In <u>McClenney v. Campelton-Graceville Hospital</u>, 1999 WL 639815 (N.D. Fla. 1999), the district court determined, on reconsideration, that the 120 day time for service runs from the filing of the amended complaint, and not the filing of the original complaint, an issue irrelevant to this case.

## CONCLUSION

For the reasons asserted herein, there is no legitimate basis for Defendants' Motion.  BKC respectfully requests that the Motion be denied.

WHEREFORE, plaintiff Burger King Corporation requests this Honorable Court enter an order denying Defendants' motion to dismiss and find that Burger King Corporation has properly effected service of process on each of the Defendants.

Respectfully submitted,

GENOVESE LICHTMAN JOBLOVE &
BATTISTA
Attorneys for Burger King Corporation
Bank of America Tower
36th Floor
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 349-2300
Facsimile:  (305) 349-2310

By _____
     Michael D. Joblove
        Florida Bar Number 354147
     Dennis Leone
        Florida Bar Number 069401

8

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 6th

day of November, 2000 to Robert M. Einhorn, Esq., Zarco & Pardo, Bank of America Tower, 100

Southeast Second Street, Suite 2700, Miami, FL 33131.

Of Counsel

N: Documents WORK BK Belle respmot dis2 wpd

9

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number:  00-1804-CIV-GOLD
Magistrate Judge Simonton

BURGER KING CORPORATION,

        Plaintiff,

vs.

ASHLAND EQUITIES, INC.,
REINOLD T. BELLE, and
ROBERT E. CLARKE,

        Defendants.

_____/

### DECLARATION OF DENNIS LEONE

I, Dennis Leone, declare as follows:

1.      This declaration is made upon personal knowledge and if called as a witness I could testify to the matters set forth in this declaration.  I am an associate of the law firm of Genovese Lichtman Joblove & Battista (the "Firm").  The Firm represents Burger King Corporation ("BKC") in the above-captioned matter.

2.      As a result of the Firm's representation of BKC in this matter, I spoke with Defendants' counsel on several occasions regarding this matter.

3.      Early in the matter, Defendants' Kentucky counsel and I discussed that BKC was not going to formally serve Defendants so that the settlement process was not upset.  Defendants' Kentucky counsel agreed and expressed appreciation for this consideration.

4.      I contacted Defendants' Kentucky counsel on August 24, 2000 to discuss filing a Joint Status Report.  Understanding that the deadline for service was approaching, I also requested

ATTACHMENT / EXHIBIT _____

Defendants' Kentucky counsel to accept service of process on Defendants' behalf to avoid the cost and expense of service, as well as the traumatic experience often associated with being served by a process server which would be counterproductive to on-going settlement talks. Defendants' Kentucky counsel agreed with the spirit of the suggestion, expressed his appreciation, and informed the undersigned that he would recommend the agreement to his clients. Defendants' Kentucky counsel promised to contact the undersigned with his clients' response shortly.

5.      After trading several phone calls, Defendants' Kentucky counsel agreed on September 21, 2000 to accept service of process on behalf of all Defendants as of that date, the last day of the 120 day period for service.  During the September 21, 2000 conversation, the undersigned agreed to forward file-stamped copies of the Complaint to Kentucky counsel.  Pursuant to counsel's conversation, the undersigned forwarded by overnight delivery file-stamped copies of the complaint for each party on September 29, 2000. (See, Ex. A to BKC's response and supporting memorandum of law).  Additionally, based upon the parties' continuing settlement negotiations and Defendants' agreement to accept service of process through their attorney, BKC agreed to a generous extension of time for Defendants to respond to the complaint.  (Id.).

6.      Immediately upon notice of Defendants' broken promise, BKC began its attempts to serve all Defendants.  To date, Defendants, Reinold Belle and Ashland Equities, Inc. were served. BKC is continuing its efforts to serve the last defendant, Robert Clarke.

I declare under penalty of perjury that the foregoing is true and correct this _____ day of November, 2000.

DENNIS LEONE

X:\Documents\WORK\BK\Belle\leonedec.wpd

2



# GENOVESE LICHTMAN JOBLOVE & BATTISTA
### P.A.
*Attorneys at Law*

**Dennis Leone**
**Telephone: 305.349.2330**

**Via FedEx®**

September 29, 2000

David O. Welch, Esq.
Bank of Ashland Building
1422 Winchester Avenue
Post Office Box 1653
Ashland, Kentucky 41105

> RE:   **Burger King Corporation v. Ashland Equities, Inc. et al.**
>        **U.S. Dist. Ct. C.D. Fla. Case No. 00-1804-CIV-GOLD**

Dear David:

Thank you for speaking with me last week. This letter will confirm our agreement whereby you (1) acknowledged your authority to accept service of process on behalf of your clients, Ashland Equities, Inc., Reinold T. Belle, and Robert E. Clarke, and (2) agreed to accept service of process on behalf of each defendant in the above-captioned matter as of Thursday, September 21, 2000. As such, enclosed is a copy of the complaint and original summons for each defendant.

Additionally, Burger King Corporation ("BKC") agreed to an enlargement of time within which your clients' could file their response to the complaint equal to 20 days from the date BKC forwards written notice of its intent to proceed with the litigation.

Please contact me should you wish to further discuss this matter. Your professional courtesy is appreciated.

Sincerely,

Dennis Leone

enclosure

cc:   Burger King Corporation

X:\Documents\WORK\BK\Belle\Welch-004.wpd

**ATTACHMENT / EXHIBIT B**

**FedEx® USA Airbill**

Tracking Number 8185 2486 0528

**Sender's Copy**

**From** *Please print and press hard.*

Date 9/29/00

Sender's FedEx Account Number 2003-1328-3

Sender's Name D. Leone

Phone ( 305 ) 349-2300

Company GENOVESE LICHTMAN JOBLOVE BATT

Address 100 SE 2ND ST FL 36

City MIAMI   State FL   ZIP 33131

Your Internal Billing Reference OPTIONAL
*First 24 characters will appear on invoice.*

**To**

Recipient's Name DAVID O. WELSH   Phone ( )

Company

Address 1422 WINCHESTER AVE
*To "HOLD" at FedEx location, print FedEx address.* We cannot deliver to P.O. Boxes or P.O. ZIP codes.

City ASHLAND   State KY   ZIP 41105

**NEW Peel and Stick FedEx USA Airbill**

See back for application instructions.

**Questions? Call 1·800·Go·FedEx®** (800-463-3339)
Visit our Web site at www.fedex.com

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

0128420593

**4a Express Package Service** *Packages up to 150 lbs.*

[X] FedEx Priority Overnight   [ ] FedEx Standard Overnight   [ ] FedEx First Overnight

[ ] FedEx 2Day®   [ ] FedEx Express Saver®

**4b Express Freight Service** *Packages over 150 lbs.*

[ ] FedEx 1Day Freight   [ ] FedEx 2Day Freight   [ ] FedEx 3Day Freight

**5 Packaging**

[X] FedEx Envelope/Letter®   [ ] FedEx Pak®   [ ] Other Pkg.

**6 Special Handling**

[ ] SATURDAY Delivery   [ ] SUNDAY Delivery   [ ] HOLD Weekday at FedEx Location   [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
[X] No   [ ] Yes As per attached Shipper's Declaration   [ ] Yes Shipper's Declaration not required   [ ] Dry Ice   [ ] Cargo Aircraft Only

**7 Payment** *Bill to:*

[ ] Sender   [ ] Recipient   [X] Third Party   [ ] Credit Card   [ ] Cash/Check

FedEx Acct. No. or Credit Card No. 0331-0770-C

Total Packages   Total Weight   Total Declared Value $ .00

FedEx Use Only

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

By signing you authorize us to deliver this shipment without obtaining a signature and agree to indemnify and hold us harmless from any resulting claims.

359



**GENOVESE**
**LICHTMAN**
**JOBLOVE &**
**BATTISTA**
P.A.
*Attorneys at Law*

Writer's Direct Dial
(305) 349-2330

<u>Via Facsimile</u>

August 24, 2000

David O. Welch, Esq.
Bank of Ashland Building
1422 Winchester Avenue
P.O. Box 1653
Ashland, KY 41105

     **RE:**   **Burger King Corporation v. Ashland Equities, et al.**
          <u>**U.S. Dist. Ct. C.D. Fla. Case No. 00-1804-CIV-GOLD**</u>

Dear David:

As you know, this firm represents Burger King Corporation ("BKC") in the above-captioned matter.

Pursuant to our conversation earlier today, attached for your review is a draft of the proposed scheduling report BKC will file first thing tomorrow morning. As we discussed, please review the document and contact me today with any comments you may have.

Additionally, please advise to me at your earliest convenience of whether you will accept service of process on behalf of your clients in this matter. I look forward to hearing form you shortly.

        Sincerely,

        Dennis Leone

\sr
attachment
X:\Documents\WORK\BK\Belle\Welch-001.wpd

**ATTACHMENT / EXHIBIT**

Bank of America Tower • 100 Southeast Second Street, 36th Floor • Miami, Florida 33131 • Telephone: 305.349.2300 • Facsimile 305.349.2310

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

CASE NO:  00-1804-CIV-GOLD/SIMONTON

BURGER KING CORPORATION,

      Plaintiff,

vs.

ASHLAND EQUITIES, INC.,
REINOLD T. BELLE, and
ROBERT E. CLARKE

      Defendants.
_____/

### SCHEDULING REPORT

Plaintiff Burger King Corporation ("BKC"), pursuant to S.D. Fla. L. R. 16.1B, and the

Court's May 26, 2000 Order Directing Parties to File a Scheduling Report and Scheduling Order,

hereby submits its Scheduling Report. BKC submits this Scheduling Report unilaterally, as Ashland

Equities, Inc., Reinold T. Belle and Robert E. Clarke (collectively, "Defendants") have not yet been

served with the Complaint as the parties are focusing their efforts on attempting to reach a settlement

of this litigation.

### I. Compliance with S.D.Fla.L.R. 16.1(B)(7)

a.    Discovery Schedule: BKC anticipates the following preliminary discovery schedule:

    1.    January 19, 2001 - Plaintiffs shall furnish Defendant with list of all expert witnesses.

    2.    February 1, 2001 - Defendant shall furnish Plaintiff with list of all expert witnesses.

    3.    March 1, 2001 - The parties shall exchange expert witness summaries and reports.

    4.    April 10, 2001 - All expert discovery shall be completed.

    5.    May 17, 2001 - All non-expert discover shall be completed.

6.      BKC anticipates being ready for trial of this matter: August 31, 2001.

b.      Settlement: The parties are hopeful that they will reach a settlement in this matter.  In fact, the parties are continuing to work toward settlement of this matter.

c.      Likelihood of additional parties: BKC does not anticipate the addition of any other parties.

d.      Proposed Limits on Time:

      i.      Deadline to join additional parties and amend pleadings: April 2, 2001.

      ii.     Deadline to file motions: June 11, 2001.

      iii.    Deadline for hearing motions: July 13, 2001.

      iv.     Deadline to complete discovery: May 17, 2001.

e.      Proposals for Simplification of Issues: BKC will work with Defendants in a good-faith attempt to simplify the issues.

f.      Necessity or Desirability of Amendments to Pleadings: BKC does not believe that amending the pleadings is necessary at this time.  Defendants, however, have not yet been served with the Complaint.

g.      Possibility of Obtaining Admissions: BKC will work with Defendants in a good-faith effort to obtain as many admissions of fact as possible.

h.      Suggestions for Avoidance of Unnecessary Proof: BKC will work with Defendants in a good- faith effort to limit the factual issues requiring the presentation of evidence in order to shorten the length of trial.

i.      Advisability of referring matters to a magistrate judge: BKC agrees to refer all non-dispositive motions to a magistrate judge.

j.      Trial:  BKC has not demanded a jury trial.  Defendants have not yet been served with the Complaint.  This trial should last approximately 3-4 days.

k.  Requested Trial Dates:

Proposed Pre-trial conference: August 31, 2001.

Proposed trial date: September 17, 2001.

## II. Additional Information

a.  Designation of Case Management Track: Standard Case Track.

b.  Inclusion of Dates:

| | Date | Action |
|---|---|---|
| By | May 21, 2001 | All non-dispositive pretrial motions (including motions pursuant to FED.R.Civ.P. 14, 15, 18 through 22, and 42 motions) shall be filed. Any motion to amend or supplement the pleadings filed pursuant to FED.R.CIV.P. 15(a) shall comport with S.D.Fla.L.R. 15.1 and shall be accompanied by the proposed amended or supplemental pleading and a proposed order as required. |
| By | April 27, 2001 | Plaintiff shall furnished opposing counsel with a written list containing the names and addresses of all _expert_ witnesses intended to be called at trial and only those expert witnesses listed shall be permitted to testify. |
| By | April 27, 2001 | Defendant shall furnish opposing counsel with a written list containing the names and addresses of all expert witnesses intended to be called at trial and only those expert witnesses listed shall be permitted to testify. |
| By | March 1, 2001 | The parties shall comply with S.D.Fla.L.R.16.1 K concerning the exchange of expert witness summaries and reports. This date shall supercede any other date in local rule 16.1.K. |
| By | April 10, 2001 | All expert discovery shall be completed. |
| By | May 17, 2001 | All non-expert discovery shall be completed. |
| By | March 1, 2001 | All dispositive pretrial motions and memoranda of law must be filed. |
| By | June 11, 2001 | Mediation shall be completed. |
| By | July 31, 2001 | Pretrial Stipulation and Motions in Limine shall be filed. |

3

By      August 31, 2001        Proposed pretrial conference date.

By      September 17, 2001     Proposed trial date.

c.      <u>Jury or Non-Jury Trial</u>: BKC has not demanded a jury trial.

d.      <u>Nature of The Action</u>: This is an action to collect amounts due BKC from Defendants under five separate franchise agreements and two leases between the parties.

e.      <u>Uncontested Facts</u>: BKC is unable to state which facts are uncontested as the Defendants have not yet been served.  BKC states that it will work in good-faith with Defendants to stipulate to as many facts as possible.

f.      <u>Issues</u>: The issues in this case involve:  a) whether Defendants were in default of the operative agreements; and b) whether Defendants owe BKC past due amounts under the operative agreements.

g.      <u>Pending Motions</u>: No pending motions at this time.

h.      <u>Discovery</u>: No discovery has been conducted thus far as the parties have concentrated their efforts on settlement.

i.      <u>Unique Legal or Factual Aspects</u>: None at this time.

j.      <u>Referring Matters to the Magistrate</u>: BKC agrees to submit all non-dispositive motions to a Magistrate Judge.

k.      <u>Early Case Management Conference</u>: This case does not require an early case management conference.

l.      <u>Settlement</u>: Settlement in this mater has not ben reached.  The parties are actively attempting to settle this matter.

4

m.    Manual on Complex Litigation: The manual on complex litigation is not necessary in this

matter.

n.    Disclosure Requirement: Should the parties efforts at settlement fail, BKC will, in good-faith,

make all disclosure required under the Federal and Local Rules of Civil Procedure.

o.    Other Matters of Assistance: There are no other matters which may aid the court in the fair

and expeditions administration and disposition of this case.


GENOVESE LICHTMAN JOBLOVE
        & BATTISTA
Attorneys for Plaintiff
100 Southeast Second Street
36th Floor
Miami, Florida 33131
(305) 349-2300 - Telephone
(305) 349-2310 - Facsimile


By: _____
        Michael D. Joblove
        Florida Bar No. 354147
        Dennis Leone
        Fla. Bar No. 069401
        Amanda Jason
        Fla. Bar No. 0147052


X:\Documents\WORK\BK\Belle\Scheduling.rpt.wpd

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

CASE NO: 00-1804-CIV-GOLD/SIMONTON

BURGER KING CORPORATION,

        Plaintiff,

vs.

ASHLAND EQUITIES, INC.,
REINOLD T. BELLE, and
ROBERT E. CLARKE

        Defendants.

_____/

## PROPOSED SCHEDULING ORDER

THIS CAUSE has come before the Court upon Burger King Corporation's Scheduling Report filed August 24, 2000. The Court being fully advised in the premises, it is

ORDERED AND ADJUDGED that:

a.    This case is assigned to an standard track pursuant to S.D. Fla. L.R. 16.2.b.

b.    All discovery shall be concluded on _____;

c.    The deadline to join additional parties and to amend the pleadings is _____;

d.    The deadline for filing all pretrial motions is _____;

e.    The deadline for resolution of all pretrial motions by the Court is _____;

f.    This case does not require the use of the Manual on Complex Litigation;

g.    This cause is hereby set for pretrial conference before the Honorable Alan S. Gold, at the United States District Court, 301 North Miami Avenue, Miami, Florida on _____;

h.    This cause is hereby set for trial before the Honorable Alan S. Gold, at the United States District Court, **301 North Miami** Avenue, Miami, Florida on _____.

DONE AND ORDERED at Miami, Florida this _____ day of _____, 2000.


_____
ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Dennis Leone, Esq.



X:\Documents\WORK\BK\Belle\Scheduling.ord.wpd

2

## Confirmation Report — Memory Send

```
                                    Time     : Aug-24-00  02:48pm
                                    Tel line :
                                    Name     :
```

| | | |
|---|---|---|
| Job number | : | 692 |
| Date | : | Aug-24 02:46pm |
| To | : | 0325#2000*169#16063258155# |
| Document pages | : | 09 |
| Start time | : | Aug-24 02:46pm |
| End time | : | Aug-24 02:48pm |
| Pages sent | : | 09 |
| Status | : | OK |
| Job number | : 692 | *** SEND SUCCESSFUL *** |

## GENOVESE LICHTMAN JOBLOVE & BATTISTA
### A PROFESSIONAL ASSOCIATION
Bank of America Tower
26th Floor
100 S.E. Second St.
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

## TELECOPY FORM

CLIENT/MATTER NO: _____ 2000-199 _____

DATE: _____ August 24, 2000 _____

TO: _____ David Welch, Esq. _____

LOCATION: _____

TELECOPY PHONE NO. _____ (606) 325-8155 _____

RECIPIENT'S PHONE NO. _____ (606) 325-8446 _____

FROM: _____ Dennis Leone, Esq. _____

SENDER'S DIRECT LINE: _____ (305) 349-2330 _____

PAGES FAXED (including this page) _____

SHOULD YOU NOT RECEIVE ALL MATERIAL TRANSMITTED
PLEASE CONTACT US AT (305) 349-2300

### MESSAGE



# BLUE KNIGHT INVESTIGATIONS, INC.

401 Eleventh Street, Suite 803  ·  Huntington, West Virginia 25701  ·  304-522-2800

I,The Undersigned,A Credible Person Over 21 Years Certify That
Personal Service Was Given To *REINOLD T. BELL*
By Handing Them Copies Of *SUMMONS*

_____
**Process Server**

Date Served *10-27-2000*

[OFFICIAL SEAL
Notary Public, State of West Virginia
Donna M. Hitchman
The Cheary Brothers
401 - 11th St., Suite 701
Huntington, WV 25701
My commission expires December 6, 2002]

Taken Subscribed And Sworn
Before Me This *1st* Day Of *November* ~19~ *2000*
My Commission Expires *Dec. 6th, 2002*

_____
**Notary Public**

## Non Service and Due Diligence Section

Declarant states he diligently searched the land area described as _____
for defendant and was unable to find defendant for process service at this time.  The following attempts and the resources used for this search are described below:

_____
_____
_____

Typed or Printed Name of Process Server          Server Signature          Requested Number:

Subscribed and Sworn to before me this _____

**Service Fees Total** [          ]          a Notary Public in the State of, Residing at: _____

Agent/Server Do NOT Print

~ATTACHMENT / EXHIBIT~



# BLUE KNIGHT INVESTIGATIONS, INC.

401 Eleventh Street, Suite 803 • Huntington, West Virginia 25701 • 304-522-3866

I, The Undersigned, A Credible Person Over 21 Years Certify That
Personal Service Was Given To _ASHLAND EQUITIES_
By Handing Them Copies Of _SUMMONS_

_(signature)_
**Process Server**

Date Served _10-27-2000_

Taken Subscribed And Sworn
Before Me This _1st_ Day Of _November_ ~~199~~ 2000
My Commission Expires _Dec. 6th, 2002_

_(signature)_
**Notary Public**

## Non Service and Due Diligence Section

Declarant states he diligently searched the local area described as _____
for defendant and was unable to find defendant for process service at this time. The following attempts and the resources used for this search are described below:

_____
_____
_____

| Typed or Printed Name of Process Server | Server Signature | Registration Number |
|---|---|---|

Subscribed and Sworn to before me this _____

**Service Fees Total** [        ]          a Notary Public in the State of, Residing at _____

Agent/Server Do NOT Print

Law Offices Of

# DAVID O. WELCH

Fifth Third Bank Building

1422 Winchester Avenue

P.O. Box 1653

DAVID O. WELCH

Ashland, Kentucky 41105-1653

Telephone 606-325-8446

Telefax 606-325-8155

October 16, 2000

VIA U. S. MAIL
and VIA FAX

Mr. Dennis Leone
Genovese Lichtman Joblove & Battista
Bank of America Tower, 36th Floor
100 S. E. Second Street
Miami, Florida    33131

SUBJECT:  Burger King Corporation v.
          Ashland Equities, et al
          U.S. Dist. Ct. C.D. Fla.
          Case No. 00-1804-CIV-GOLD

Dear Mr. Leone:

    This will advise you that Mr. Belle, Mr. Clarke, and the
corporation have each withdrawn the authority that I previously had
to accept service of Summons on their behalf in the above matter.
This withdrawal of authority occurred on October 13, 2000.

    As you are very much aware, I previously informed you that I
had such authority which I did, but I never received a Summons
during the period of time that I had that authority.

Sincerely yours,

David O. Welch

DOW:jw

ATTACHMENT / EXHIBIT



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: oprusher@whopper.com

## PERSONAL AND CONFIDENTIAL

August 31, 2000

**VIA FEDERAL EXPRESS
and CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY  41101

RE:  **BURGER KING® Restaurant #2726 [BKL]**          **BURGER KING® Restaurant #2989 [BKL]**
     **1240 Winchester Avenue**                        **711 South 3rd Street**
     **Ashland, KY 41101 ("BK#2726")**                 **Ironton, OH 45638 ("BK#2989")**

     **BURGER KING® Restaurant #4230 [DTL]**           **BURGER KING® Restaurant #6655 [DTL]**
     **320 Diederich Boulevard**                       **789 N. Carol Malone Boulevard**
     **Ashland, KY 41101 ("BK #4230")**                **Grayson, KY 41143 ("BK #6655")**

     **BURGER KING® Restaurant #9824 [DTL]**
     **3613 13th Street**
     **Ashland, KY 41101 ("BK #9824")**

### EXTENSION OF NOTICE OF DEFAULT

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from
Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that
given the meeting between Gregg Hicks und members of the group interested in purchasing your
restaurants, BKC is granting a tenth extension of the termination date under the Notice of
Default. I am hereby extending the termination date under the Franchise Agreements referenced
in the Notice of Default to September 15, 2000.

ATTACHMENT / EXHIBIT _F_

Messrs. Reinold T. Belle and Robert E. Clarke
August 31, 2000
Page 2

All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:     Dennis Leone (via facsimile)
        David Welch (via facsimile)
        Via email:
        Will Gooden
        Gregg Hicks
        Valerie Moo Young
        Rich Wyckoff



## FAX TRANSMISSION

| | | | |
|---|---|---|---|
| **To:** | David Welch, Esq. | **Date:** | August 16, 2000 |
| **Company:** | | **Time:** | 3:21 PM |
| **From:** | Craig Prusher | **FAX#:** | (606) 325-8155 |
| | | **Cover plus:** | 2 |

---

☑  Hard copy will not follow.

RE: **Belle/Clarke**

Attached please find letter dated August 16, 2000 regarding the above.


cc:    Dennis Leone (via facsimile: 305-349-2310)


**NOTICE OF CONFIDENTIALITY:**
The information contained in this facsimile message is confidential information intended only for the use of the individual or entity addressed above.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the below address via the Postal Service. We will reimburse you for all postage expenses incurred. Thank you.

**BURGER KING CORPORATION**
17777 Old Cutler Road, Law Dept./4 South • Miami, Florida 33157 • (305) 378-3066 • Fax (305) 378-3191 • cprusher@whopper.com

A Diageo Company



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

## PERSONAL AND CONFIDENTIAL

August 16, 2000

**VIA FEDERAL EXPRESS
and CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY  41101

**RE:**  **BURGER KING® Restaurant #2726 [BKL]**          **BURGER KING® Restaurant #2989 [BKL]**
     **1240 Winchester Avenue**                          **711 South 3rd Street**
     **Ashland, KY 41101 ("BK#2726")**                    **Ironton, OH 45638 ("BK#2989")**

     **BURGER KING® Restaurant #4230 [DTL]**              **BURGER KING® Restaurant #6655 [DTL]**
     **320 Diederich Boulevard**                          **789 N. Carol Malone Boulevard**
     **Ashland, KY 41101 ("BK #4230")**                   **Grayson, KY 41143 ("BK #6655")**

     **BURGER KING® Restaurant #9824 [DTL]**
     **3613 13th Street**
     **Ashland, KY 41101  ("BK #9824")**

### EXTENSION OF NOTICE OF DEFAULT

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that given the meeting between Gregg Hicks and members of the group interested in purchasing your restaurants, BKC is granting a ninth extension of the termination date under the Notice of Default. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to August 31, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
August 16, 2000
Page 2

All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:   Dennis Leone (via facsimile)
      David Welch (via facsimile)
      Via email:
      Will Gooden
      Gregg Hicks
      Valerie Moo Young
      Rich Wyckoff



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

### PERSONAL AND CONFIDENTIAL

July 31, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY  41101

RE:   **BURGER KING® Restaurant #2726 [BKL]**   **BURGER KING® Restaurant #2989 [BKL]**
       **1240 Winchester Avenue**         **711 South 3rd Street**
       **Ashland, KY 41101 ("BK#2726")**   **Ironton, OH 45638 ("BK#2989")**

       **BURGER KING® Restaurant #4230 [DTL]**   **BURGER KING® Restaurant #6655 [DTL]**
       **320 Diederich Boulevard**         **789 N. Carol Malone Boulevard**
       **Ashland, KY 41101 ("BK #4230")**    **Grayson, KY 41143 ("BK #6655")**

       **BURGER KING® Restaurant #9824 [DTL]**
       **3613 13th Street**
       **Ashland, KY 41101 ("BK #9824")**

### EXTENSION OF NOTICE OF DEFAULT

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that given the meeting between Gregg Hicks and members of the group interested in purchasing your restaurants, BKC is granting an eighth extension of the termination date under the Notice of Default. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to August 16, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
July 31, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:    Dennis Leone (via facsimile)
       David Welch (via facsimile)
       Via email:
       Will Gooden
       Gregg Hicks
       Valerie Moo Young
       Rich Wyckoff



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

**PERSONAL AND CONFIDENTIAL**

July 14, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

RE:     **BURGER KING® Restaurant #2726 [BKL]**          **BURGER KING® Restaurant #2989 [BKL]**
        **1240 Winchester Avenue**                       **711 South 3rd Street**
        **Ashland, KY 41101 ("BK#2726")**                **Ironton, OH 45638 ("BK#2989")**

        **BURGER KING® Restaurant #4230 [DTL]**          **BURGER KING® Restaurant #6655 [DTL]**
        **320 Diederich Boulevard**                      **789 N. Carol Malone Boulevard**
        **Ashland, KY 41101 ("BK #4230")**               **Grayson, KY 41143 ("BK #6655")**

        **BURGER KING® Restaurant #9824 [DTL]**
        **3613 13th Street**
        **Ashland, KY 41101  ("BK #9824")**

**EXTENSION OF NOTICE OF DEFAULT**

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from
Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that
given the meeting between Gregg Hicks and members of the group interested in purchasing your
restaurants, BKC is granting a seventh extension of the termination date under the Notice of
Default. I am hereby extending the termination date under the Franchise Agreements referenced
in the Notice of Default to July 31, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
July 14, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:    Dennis Leone (via facsimile)
       David Welch (via facsimile)
       Via email:
       Will Gooden
       Gregg Hicks
       Valerie Moo Young
       Rich Wyckoff



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

**PERSONAL AND CONFIDENTIAL**

June 30, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY  41101

RE:   **BURGER KING® Restaurant #2726 [BKL]**       **BURGER KING® Restaurant #2989 [BKL]**
        **1240 Winchester Avenue**                 **711 South 3rd Street**
        **Ashland, KY 41101 ("BK#2726")**      **Ironton, OH 45638 ("BK#2989")**

        **BURGER KING® Restaurant #4230 [DTL]**       **BURGER KING® Restaurant #6655 [DTL]**
        **320 Diederich Boulevard**                **789 N. Carol Malone Boulevard**
        **Ashland, KY 41101 ("BK #4230")**      **Grayson, KY 41143 ("BK #6655")**

        **BURGER KING® Restaurant #9824 [DTL]**
        **3613 13th Street**
        **Ashland, KY 41101 ("BK #9824")**

**EXTENSION OF NOTICE OF DEFAULT**

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that given the meeting between Gregg Hicks and members of the group interested in purchasing your restaurants, BKC is granting a sixth extension of the termination date under the Notice of Default. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to July 14, 2000.

H:\CS\FRANI.TRD\BELLE-CLARKDEF#6

Messrs. Reinold T. Belle and Robert E. Clarke
June 30, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel


cc:     Dennis Leone (via facsimile)
        David Welch (via facsimile)
        Via email:
        Will Gooden
        Gregg Hicks
        Valerie Moo Young
        Rich Wyckoff

H:\CSP\FRANU.TR\BELLE-CLARKDMP#6



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

**PERSONAL AND CONFIDENTIAL**

June 23, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

RE:   **BURGER KING® Restaurant #2726 [BKL]**    **BURGER KING® Restaurant #2989 [BKL]**
       **1240 Winchester Avenue**             **711 South 3rd Street**
       **Ashland, KY 41101 ("BK#2726")**     **Ironton, OH 45638 ("BK#2989")**

       **BURGER KING® Restaurant #4230 [DTL]**    **BURGER KING® Restaurant #6655 [DTL]**
       **320 Diederich Boulevard**           **789 N. Carol Malone Boulevard**
       **Ashland, KY 41101 ("BK #4230")**    **Grayson, KY 41143 ("BK #6655")**

       **BURGER KING® Restaurant #9824 [DTL]**
       **3613 13th Street**
       **Ashland, KY 41101 ("BK #9824")**

## EXTENSION OF NOTICE OF DEFAULT

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from
Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that
given the meeting between Gregg Hicks and members of the group interested in purchasing your
restaurants, BKC is granting a fifth extension of the termination date under the Notice of Default.
I am hereby extending the termination date under the Franchise Agreements referenced in the
Notice of Default to June 30, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
June 23, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:     Dennis Leone (via facsimile)
        David Welch (via facsimile)
        Via email:
        Will Gooden
        Gregg Hicks
        Valerie Moo Young
        Rich Wyckoff



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail: cprusher@whopper.com

**PERSONAL AND CONFIDENTIAL**

June 12, 2000

**VIA FEDERAL EXPRESS
and CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

RE:   **BURGER KING® Restaurant #2726 [BKL]**     **BURGER KING® Restaurant #2989 [BKL]**
       **1240 Winchester Avenue**                **711 South 3rd Street**
       **Ashland, KY 41101 ("BK#2726")**       **Ironton, OH 45638 ("BK#2989")**

       **BURGER KING® Restaurant #4230 [DTL]**     **BURGER KING® Restaurant #6655 [DTL]**
       **320 Diederich Boulevard**                 **789 N. Carol Malone Boulevard**
       **Ashland, KY 41101 ("BK 4230")**         **Grayson, KY 41143 ("BK #6655")**

       **BURGER KING® Restaurant #9824 [DTL]**
       **3613 13th Street**
       **Ashland, KY 41101 ("BK #9824")**

**<u>EXTENSION OF NOTICE OF DEFAULT</u>**

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that at the request of your legal counsel, David Welch, BKC is granting a fourth extension of the termination date under the Notice of Default. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to June 23, 2000.

**BURGER KING CORPORATION**
17777 Old Cutler Road • Miami, Florida 33157 • (305) 378-7011

H:\CSP\FRANL.TR\BELLB-CLARK.DEFN4

Messrs. Reinold T. Belle and Robert E. Clarke
June 12, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:     Dennis Leone (via facsimile)
        David Welch (via facsimile)
        Via email:
        Will Gooden
        Gregg Hicks
        Valerie Moo Young
        Rich Wyckoff

H:\CS\FRANL.TRI\BELLE-CLARK.DEFM



Telephone: (305) 378-3066
Facsimile: (305) 378-3191
E-mail. cprusher@whopper.com

**PERSONAL AND CONFIDENTIAL**

June 7, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

RE:  **BURGER KING® Restaurant #2726 [BKL]**      **BURGER KING® Restaurant #2989 [BKL]**
     **1240 Winchester Avenue**                    **711 South 3rd Street**
     **Ashland, KY 41101 ("BK#2726")**             **Ironton, OH 45638 ("BK#2989")**

     **BURGER KING® Restaurant #4230 [DTL]**       **BURGER KING® Restaurant #6655 [DTL]**
     **320 Diederich Boulevard**                   **789 N. Carol Malone Boulevard**
     **Ashland, KY 41101 ("BK #4230")**            **Grayson, KY 41143 ("BK #6655")**

     **BURGER KING® Restaurant #9824 [DTL]**
     **3613 13th Street**
     **Ashland, KY 41101 ("BK #9824")**

<u>**EXTENSION OF NOTICE OF DEFAULT**</u>

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that at the request of your legal counsel, David Welch, BKC is granting a third extension of the termination date under the Notice of Default. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to June 12, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
June 7, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:     Dennis Leone (via facsimile)
        David Welch (via facsimile)
        Will Gooden (via email)
        Gregg Hicks (via email)
        Valerie Moo Young
        Rich Wykoff



**PERSONAL AND CONFIDENTIAL**

June 2, 2000

**VIA FEDERAL EXPRESS
and CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

| | | |
|---|---|---|
| **RE:** | **BURGER KING® Restaurant #2726 [BKL]**<br>1240 Winchester Avenue<br>Ashland, KY 41101 ("BK#2726") | **BURGER KING® Restaurant #2989 [BKL]**<br>711 South 3rd Street<br>Ironton, OH 45638 ("BK#2989") |
| | **BURGER KING® Restaurant #4230 [DTL]**<br>320 Diederich Boulevard<br>Ashland, KY 41101 ("BK #4230") | **BURGER KING® Restaurant #6655 [DTL]**<br>789 N. Carol Malone Boulevard<br>Grayson, KY 41143 ("BK #6655") |
| | **BURGER KING® Restaurant #9824 [DTL]**<br>3613 13th Street<br>Ashland, KY 41101 ("BK #9824") | |

## EXTENSION OF NOTICE OF DEFAULT

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that at the request of your legal counsel, Tracey Wise, BKC is granting a second extension of the termination date under the Notice of Default. This is due to the fact that you have hired additional legal counsel, David Welch, to represent you. I am hereby extending the termination date under the Franchise Agreements referenced in the Notice of Default to June 7, 2000.

Messrs. Reinold T. Belle and Robert E. Clarke
June 2, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prosher
Associate General Counsel

cc:     Dennis Leone (via facsimile)
        Tracey Wise (via facsimile: 606/281-1179)
        Will Gooden (via email)
        Greg Hicks (via email)
        Valerie Moo Young



**PERSONAL AND CONFIDENTIAL**

May 25, 2000

**VIA FEDERAL EXPRESS**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Messrs. Reinold T. Belle and Robert E. Clarke
Ashland Equities, Inc.
1544 Winchester Avenue
Suite 708
Ashland, KY 41101

RE:    BURGER KING® Restaurant #2726 [BKL]        BURGER KING® Restaurant #2989 [BKL]
       1240 Winchester Avenue                     711 South 3rd Street
       Ashland, KY 41101 ("BK#2726")              Ironton, OH 45638 ("BK#2989")

       BURGER KING® Restaurant #4230 [DTL]        BURGER KING® Restaurant #6655 [DTL]
       320 Diederich Boulevard                    789 N. Carol Malone Boulevard
       Ashland, KY 41101 ("BK #4230")             Grayson, KY 41143 ("BK #6655")

       BURGER KING® Restaurant #9824 [DTL]
       3613 13th Street
       Ashland, KY 41101 ("BK #9824")

**EXTENSION OF NOTICE OF DEFAULT**

Dear Messrs. Belle and Clarke:

Reference is hereby made to that certain Notice of Default dated May 15, 2000 from
Burger King Corporation ("BKC") to you (the "Notice of Default"). This is to inform you that at
the request of your legal counsel, Tracey Wise, BKC is granting an extension of the termination
date under the Notice of Default. I am hereby extending the termination date under the
Franchise Agreements referenced in the Notice of Default to June 2, 2000.

H:\CSP\FRANK\TRIDDLLB-CLARKDEF

Case 1:00-cv-01804-ASG   Document 15   Entered on FLSD Docket 11/07/2000   Page 46 of 49

Messrs. Reinold T. Belle and Robert E. Clarke
May 25, 2000
Page 2


All other terms and conditions of the Notice of Default remain unmodified.

Very truly yours,

BURGER KING CORPORATION

Craig S. Prusher
Associate General Counsel

cc:    Dennis Leone (via facsimile)
       Tracey Wise (via facsimile: 606/281-1179)
       Will Gooden (via email)
       Greg Hicks (via email)
       Valerie Moo Young

1991 WL 335996                                                                    **Page 1**
(Cite as: 1991 WL 335996 (N.D.Cal.))

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

**Klaus SPENGLER, Plaintiff,**
v.
**SEAGATE TECHNOLOGY, Defendant.**

**Civ. No. 89-20102 SW.**

June 6, 1991.

Thomas W. Hauser, A.P.C., Del Mar, Cal., for plaintiff.

Gary P. Scholick, Littler, Mendelson, Fastiff & Tichy A Professional Corporation, San Francisco, Cal., for defendant Seagate Technology, Inc.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER FED.R.CIV.P. 4(j) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, Senior District Judge.

*1 Plaintiff Klaus Spengler, a German national, filed suit on February 10, 1989, alleging that defendant Seagate Technology ("Seagate U.S.A.") breached a valid contract of employment with plaintiff. Two years earlier, plaintiff brought an action against defendant's subsidiary corporation, one Seagate GmbH ("Seagate Germany"), stating the same claim and raising the same facts. Now that the German court has dismissed the claim against Seagate Germany, defendant Seagate U.S.A. seeks to prevent plaintiff from maintaining this action on the grounds of judicial estoppel and res judicata.

Additionally, defendant moves to dismiss on the ground that plaintiff did not serve process within 120 days of filing as required by Fed.R.Civ.P. 4(j).

Because the facts in this case do not meet the requirements of judicial estoppel or res judicata as those doctrines are defined in the Ninth Circuit, defendant's motion for summary judgment on those grounds is DENIED. Moreover, because plaintiff's failure to serve within 120 days of filing was for "good cause," defendant's motion to dismiss under Fed.Civ.P. 4(j) is DENIED, and plaintiff is

granted until June 21, 1991 to effect proper service.

DISCUSSION
I. PLAINTIFF'S FAILURE TO SERVE DEFENDANT

Fed.R.Civ.P. 4(j) states:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

In the instant case, service was not made within 120 days; therefore the motion to dismiss should be granted unless "good cause" exists. See United States for the Use and Benefit of DeLoss v. Kenner, 764 F.2d 707, 711 (9th Cir.1985).

In determining whether good cause exists, the court must balance the clear intent of Rule 4(j) with the desire to provide litigants their day in court. C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1137 at 391. Good faith settlement negotiations constitute good cause for failing to serve co-defendant. Assad v. Liberty Chevrolet, Inc., 124 F.R.D. 31, 31 (R.I.D.C.1989). Good cause is more likely to be found where the defendant has not been prejudiced by the plaintiff's failure to serve process. See, e.g., Borzeka v. Heckler, 739 F.2d 444, 447 (9th Cir.1984).

At the outset, it should be noted that defendant has not been prejudiced in any way by plaintiff's failure to serve process. When the complaint was originally filed in state court, plaintiff sent a courtesy copy to defendant explaining that he would be delaying formal service until resolution of the case in Germany. In fact, defendant's attorney conceded at oral argument that plaintiff's failure to serve has not prejudiced his client.

Defendant's attorney also conceded that good cause existed to delay service of process pending the decision of the German court. Service of process would require defendant's answer, and would trigger discovery soon thereafter. Obviously, this effort would be wasted if plaintiff were able to

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works



1991 WL 335996
(Cite as: 1991 WL 335996, *1 (N.D.Cal.))

obtain complete relief in the German court.

*2 Nevertheless, because the decision of the German court was issued on July 25, 1990, defendant argues that process should have been served within 120 days of that date. As defendant views it, good cause expired on the date of the German court decision.

Defendant, however, fails to recall the fact that an English translation of the German decision was not immediately available to the parties on July 25, 1990. At a status conference on December 13, 1990, both parties indicated that they had not yet read the German opinion to determine its effect on the present litigation. Both parties also indicated that a thorough reading of the German opinion could greatly aid the settlement of this case. Indeed, for this reason, the parties expressly agreed to stay all proceedings in the lawsuit until the next status conference on February 21, 1991.

Conceptually, therefore, the justification for delay that existed while the German case was pending still existed on December 13, 1990, when the parties still had not read the German court opinion. Similarly, the good cause must have existed during the time then set aside by the parties to read the German opinion and consider its impact. As a consequence of that stipulation between the parties, the good cause for delay could not have expired before February 21, 1991.

In light of the foregoing facts, this court HEREBY RULES that plaintiff has 120 days from February 21, 1991 in which to properly serve process upon defendant. If service is not made within that time, this court will then entertain defendant's motion to dismiss under Fed.R.Civ.P. 4(j).

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has alternatively labeled this motion as one to dismiss under Fed.R.Civ.P. 12(b)(6). However, since defendant's motion necessarily relies upon evidence outside of the pleadings, the motion is properly treated as a motion for summary judgment under Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b).

### A. Fed.R.Civ.P. 56 Motion for Summary Judgment

#### 1. Burdens

The moving party bears "the initial responsibility of informing the district court of the basis for its motion...." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. Id.

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

#### 2. Weighing the Evidence

The adjudication of a summary judgment motion is not a "trial on affidavits." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Credibility determinations and weighing of the evidence are solely jury functions. Id. at 255. Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

*3 However, there may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. Anderson, 477 U.S. at 254. And in some circumstances the factual context may render the nonmoving party's claim implausible, so the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." Matsushita, 475 U.S. at 587.

### B. Judicial Estoppel

Defendant argues that plaintiff may not maintain this action because plaintiff repeatedly asserted to the German court that he did not have a contract with Seagate U.S.A. According to defendant, the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

doctrine of judicial estoppel prohibits plaintiff from later asserting in this court that he did have a contract with Seagate U.S.A.

In State of Arizona v. Shamrock Foods Co., 729 F.2d 1208 (9th Cir.1984), cert. denied, 469 U.S. 1197 (1985), the Ninth Circuit appears to adopt the following rule of judicial estoppel:

A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be later heard in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention.

Id. at 1215 (quoting Scarno v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953)) (emphasis added). Three clear requirements of this rule are: (1) that the statements in the two actions contradict each other; (2) that the statements be made in the same court; and (3) that the adversary in the two actions be the same.

Although the evidence is uncontradicted that plaintiff made statements to the German court which are inconsistent with his present claim, there is no question that the inconsistent statements were made in different courts and used against different adversaries. Thus, under the facts of this case, two of the three requirements for judicial estoppel are not met. While this court can imagine cases that would justify a broader rule of judicial estoppel (see, e.g., Yanez v. United States, 753 F.Supp. 309 (N.D.Cal.1990), that case does not exist here, where plaintiff is simply trying to maintain alternative theories of liability in two different countries.

C. Res Judicata

The doctrine of res judicata encompasses both issue preclusion, which bars the relitigation of issues that were decided in a previous action, and claim preclusion, which bars the litigation of claims and issues that were not previously decided, but should have been asserted in the earlier action. In this case, defendant clearly cannot benefit from issue preclusion because the German court did not decide whether plaintiff had an employment contract with defendant.

Defendant, however, argues that the doctrine of claim preclusion bars plaintiff from asserting against Seagate U.S.A. the same contract claim that plaintiff lost against Seagate Germany. The doctrine of claim preclusion is intended to prevent a plaintiff from splitting one cause of action into several subclaims and pursuing each subclaim separately. Nevertheless, a rule has developed that a plaintiff has a separate cause of action as to each possible defendant. C. Wright & A. Miller, Federal Practice and Procedure: Jurisdiction § 4407 at 52-53. Thus, only the defendant in the prior litigation, or its privy, may assert the doctrine of claim preclusion. Hooker v. Klein, 573 F.2d 1360, 1367 (9th Cir.1978).

*4 In this case, although defendant Seagate U.S.A. has a close relationship with its subsidiary corporation Seagate Germany, the alleged liability of Seagate U.S.A. is in no way predicated upon Seagate Germany's liability. Therefore, because defendant Seagate U.S.A. is a separate legal entity from Seagate Germany, and the two corporations do not share the relevant privity, the doctrine of claim preclusion does not bar plaintiff's lawsuit.

For the foregoing reasons, this court finds that defendant has failed to establish the existence of facts that would justify an application of the doctrines of judicial estoppel and res judicata. Therefore, defendant's motion for summary judgment on these grounds is HEREBY DENIED.

IT IS SO ORDERED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works