UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION



NIGHT BOX
FILED

MAR 19 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

BURGER KING CORPORATION

    Plaintiff,

vs.

CASE NUMBER 00-1804-CIV-GOLD

ASHLAND EQUITIES, INC.
REINOLD T. BELLE, and
ROBERT E. CLARKE,

    Defendants.
_____/

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO DISMISS
AND MOTION FOR LEAVE TO
AMEND

Defendants, ASHLAND EQUITIES, INC., REINOLD T. BELLE, and ROBERT E. CLARKE (hereinafter collectively referred to as ("AEI"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(a), hereby file this Response to Plaintiff BURGER KING CORPORATION's Motion to Dismiss and Motion for Leave to Amend, and state as follows:

### PRELIMINARY STATEMENT

In its Motion to Dismiss, Plaintiff, BURGER KING CORPORATION ("BKC"), seeks entry of an Order dismissing all four (4) of AEI's claims against BKC, a franchisor of fast-food restaurant franchises. Between 1980 and 1996, AEI purchased five (5) franchises from BKC (the "Subject Restaurants"), which granted AEI the right to operate Burger King restaurants in various locations. See Counterclaim ("CC") at ¶ 2.

AEI's Answer, Affirmative Defenses, Counterclaim and Demand For Jury Trial asserts four

1



INTERNATIONAL PLACE, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-54

(4) counterclaims. The first is for breach of contract and arises from BKC's breach of the express provisions of the contract by wrongfully and arbitrarily withholding consent to the transfer of the Subject Restaurants to Regional Investments, Inc. ("RII").[1] The second counterclaim is for breach of the implied covenant of good faith and fair dealing and arises from BKC's failure to exercise its discretionary right to consent to the transfer of the Subject Restaurants to RII in a commercially reasonable and good faith manner.

The third counterclaim is for tortious interference with contractual relations and alleges that BKC intentionally interfered with the contract and advantageous economic relationship between AEI and RII by engaging in a scheme and plan to reject any and all buyers of the Subject Restaurants in order to force AEI to relinquish its Restaurants to BKC, the owner of the property on which the Restaurants are located, without receiving any consideration from BKC.

Finally, the fourth counterclaim is for violation of the Florida Unfair and Deceptive Trade Practices Act and arises from BKC's unfair and deceptive business practice of interfering with the sale of franchises throughout its franchise system.

All of AEI's counterclaims properly state a cause of action under Florida law. On a motion to dismiss, the court must consider all allegations contained in AEI's Counterclaim as true and all allegations should be viewed in a light most favorable to AEI, as the non-moving party. See CSX Transp., Inc. v. City of Pensacola, Fla., 887 F.Supp. 275, 277 (N.D. Fla. 1995); Zombori v. Digital Equipment Corp., 878 F.Supp. 207, 208 (N.D. Fla. 1995); Nautica International, Inc. v. Intermarine USA, L.P., 5 F.Supp.2d 1333, 1339 (S.D. Fla. 1998). In short, the Counterclaim

---

[1] Due to a scrivener's error, Regional Investments, Inc., the actual purchaser of AEI's restaurants, was misnamed Ashland Investments, Inc. in the Counterclaim. Defendants request leave to amend the Counterclaim to correct this misnomer, as explained below.

2

must not be dismissed unless it is clear, beyond a doubt, that Defendants cannot prove any facts which entitle them to relief. See Fuller v. Johannessen, 76 F.3d 347, 348 (11th Cir. 1996) (quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Mann v. Air Line Pilots Ass'n, 848 F.Supp. 990, 991 (S.D. Fla. 1994). Here, since each of AEI's claims properly allege facts supporting each of its causes of action, BKC's motion to dismiss must be denied in its entirety.

## ARGUMENT

A. **Defendants' Motion for Leave to Amend**

In its Motion, BKC alleges that Defendants' counterclaim is subject to dismissal because the counterclaim exhibit is repugnant to Defendants' allegations. See Motion at p. 2. Defendants assert that Exhibit B to its Counterclaim is in fact the agreement that is the subject of Defendants' Counterclaim. However, due to scrivener's error, the name of the party who contracted with AEI for the sale of the Subject Restaurants was misnamed Ashland Investments, Inc., rather than Regional Investments, Inc., the actual name of the contracting party. Additionally, the date of the agreement was incorrectly stated as August of 1999, rather than on or about February 12, 2000. Further, Defendants have clarified their allegations against Plaintiff, specifying that BKC's wrongful rejection of the sale of the Subject Restaurants was part of BKC's scheme and plan to retake the Restaurants from AEI without having to pay any consideration to AEI. Defendants have made such corrections and additions to Counterclaim and accordingly request that this Court grant them leave to file their Amended Counterclaim.[2] A copy of the proposed Amended Counterclaim is annexed

---

[2]Rule 15(a) of the Federal Rules of Civil Procedure requires that requests for leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). In order to deny Defendants' Motion, BKC must make a significant showing of prejudice. Foman v. Davis, 371

3

hereto as Exhibit "A."

## B.     Count III - Tortious Interference With Contractual Relations

In its Motion, BKC claims that AEI failed to state a cause of action for tortious interference because BKC was a party to the contract with which it allegedly interfered. Motion, pp. 2-4. In support of its argument, BKC relies on the Court's decisions in Hall v. Burger King Corp., 912 F.Supp. 1509 (S.D. Fla. 1995) and Burger King Corp. v. Collins, No. 90-0987-Civ-Aronovitz, slip op. (S.D. Fla. June 1, 1994). In both actions, after reviewing the evidence, the Court granted **summary judgment** on the franchisees claims for tortious interference. Here, BKC seeks dismissal of these claims based on the pleadings alone. On a motion to dismiss, all allegations in the Complaint must be accepted as true. Nautica International, Inc., 5 F.Supp.2d at 1339. Here, under Florida law, AEI has properly set forth a prima facie case of tortious interference by BKC, and, thus, Plaintiff's Motion must be denied.

It is well-settled under Florida law that the elements of the tort of interference with a business relationship or expectancy are: (1) the existence of a business relationship under which the claimant has legal rights; (2) the defendant's intentional and unjustified interference with that relationship; and (3) damage to the claimant as a result of the defendant's breach of the business relationship. Morsani v. Major League Baseball, 663 So. 2d 653 (Fla. 2d DCA 1995); Charles Wallace Co. v. Alternative Copier Concepts, Inc., 583 So. 2d 396, 397 (Fla. 2d DCA 1991).

---

U.S. 178, 182 (1962); Security Ins. Co. of Hartford v. Kevin Tucker & Associates Group, Inc., 64 F.3d 1001, 1009 (6th Cir. 1995). Here, as Defendants are only correcting scrivener's errors and clarifying allegations previously made in the original Counterclaim, Defendants have made no changes to the ultimate facts upon which the claim is based, nor are Defendants making any changes to the legal claims for relief. Therefore, the Court should grant Defendants' Motion for Leave to Amend.

4

For example, in <u>Monco Enterprises, Inc. v. Ziebart Corp.</u>, 673 So. 2d 491 (Fla. 1st DCA 1996), owners of vehicle undercoating franchises who had sought to sell their franchises brought an action against the franchisor alleging tortious interference with prospective contractual relations. The complaint alleged that plaintiffs had negotiated towards a sale with a prospective purchaser for one store when Ziebart contacted the prospective purchaser and told him Ziebart would not approve him as a franchisee. However, this potential buyer was subsequently permitted to purchase a Ziebart-owned-and-operated franchise directly from Ziebart. The complaint further alleged that Ziebart contacted another person with whom plaintiffs were negotiating a sale of both businesses and sought to persuade this potential buyer to purchase a different Ziebart franchise instead. <u>Id</u>. at 492. The trial court dismissed the tortious interference count based on a failure to state a valid cause of action. In overturning the trial court, the 1st DCA noted that tort liability for interference with prospective contractual relationships is generally recognized. <u>Id</u>. (*quoting* <u>Frank Coulson, Inc.-Buick v. General Motors Corp.</u>, 488 F.2d 202 (5th Cir. 1974) (when plaintiff proves a prima facie case of interference, the defendant has the burden of avoiding liability by showing that his conduct is privileged or justified)); <u>Yoder v. Shell Oil Co.</u>, 405 So. 2d 743, 744 (Fla. 2d DCA 1981), <u>rev. denied</u>, 412 So.2d 470 (Fla. 1982) (*citing* <u>Frank Coulson</u> and stating that the privilege to interfere in a contract because of a financial interest is not unlimited). The 1st DCA held that plaintiffs clearly stated a cause of action for tortious interference with a potential business relationship and that if Ziebart claimed that it was privileged to interfere with the contract, any such assertion of privilege should be pleaded and proven. <u>Id</u>. The 1st DCA concluded that: "the question of whether an action is privileged is a jury question." <u>Id</u>.

Likewise, in <u>Yoder</u>, the plaintiff decided to sell his Shell dealership and entered into a contract of sale with a purchaser whom Shell Oil had previously approved as a dealer. <u>Id</u>. at 744.

Thereafter, an employee of Shell advised the purchaser company that it was paying too much for the dealership, causing the purchaser to back out of the sale. The jury returned a verdict for Shell Oil upon which an appeal was taken by Yoder based on the instruction given to the jury on Shell's privilege defense. On appeal, the 2nd DCA reversed the trial court and remanded the case for a new trial based on the erroneous instruction given to the jury. The 2nd DCA held that the privilege to interfere in a contract because of a financial interest is not unlimited. Id. (*quoting* Frank Coulson, 488 F.2d at 207). "The better view is that it is necessary for the interfering party to have a financial interest in the business of the third party which is in the nature of an investment in order to justify the interference." Id. (*citing* Restatement 2d, Torts, § 767 (1979)). Furthermore, "the privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract." Id. (*citing* Restatement 2d, Torts, § 777 (1979)); see McCurdy v. Collis, 508 So. 2d 380, 384 (Fla. 1st DCA 1987).

In Frank Coulson, Inc.-Buick v. General Motors Corp., 488 F.2d 202 (5th Cir. 1974),[3] plaintiff car dealer entered into negotiations for the sale of the dealership assets with a prospective purchaser. The parties agreed to a sales price of $100,000. However, one of the employees of General Motors ("GM") notified the parties that GM would not approve a sale for any amount in excess of $50,000. The jury returned a verdict on the car dealer's tortious interference claim. However, the claim was set aside by the District Court on GM's motion for judgment notwithstanding the verdict and the car dealer appealed. In concluding that the District Court was in error in setting aside the verdict, the Fifth Circuit held that proof of intentional interference by the manufacturer's employee and the resulting damage (reduction in selling price) were sufficient

---

[3] Fifth Circuit cases decided before October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

to establish dealer's *prima facie* case. Id. at 207. Since GM had a strong private interest in the success of its dealership, that interest justified intervention for proper business purposes. Id.[4] The Fifth Circuit, however, concluded that such an interest did not grant the manufacturer an absolute privilege to limit the dealer's sales price. Id.

BKC claims that its Motion to Dismiss should be granted because a cause of action for tortious interference does not exist against one who is a party to the contractual relationship with which it has allegedly interfered. See Motion at 3-4; Genet Co. v. Annheuser-Busch, Inc., 498 So. 2d 683 (Fla. 3d DCA 1986); Ethyl Corp. v. Balter, 386 So. 2d 1220 (Fla.3d DCA 1980). By BKC's rationale, one who is a party to a contract may engage in unlimited interference with the contract. This rationale is without merit. In Making Ends Meet v. Cusick, the Third District Court of Appeal distinguished the Genet holding as interference based on a "proper purpose" and held that defendant's interference through the use of improper means stated a cause of action for tortious interference with contractual relations. 719 So. 2d 926, 927 (Fla. 3d DCA 1998). See Morsani v. Major League Baseball, 663 So. 2d 653, 657 (Fla. 2d DCA 1995); Nizzo v. Amoco Oil Co., 333 So. 2d 491, 494 (Fla. 3d DCA 1976).

Here, AEI had negotiated a sale of the Subject Restaurants to RII for a purchase price of One Million Four Hundred Thousand Dollars ($1,400,000.00). The parties executed a purchase agreement and submitted it to BKC. While BKC reserved in itself the right to approve the sale to RII due to its interest in the success of its restaurants, such interest did not grant BKC an absolute privilege to interfere with the transaction between AEI and RII. Frank Coulson, Inc., 488 F.2d at 207 (a privilege to interfere in a contract because of a financial interest is not unlimited). Upon

---

[4] The Fifth Circuit relies on the Fourth Circuit's decision in Zoby v. American Fidelity Co., 242 F.2d 76, 80 (4th Cir. 1957) for this proposition.

receiving and reviewing the purchase agreement, BKC arbitrarily rejected the sale based on pretextual and demonstrably false justifications. In fact, RII possessed the financial and business wherewithal to be a successful BK franchisee. Therefore, BKC's rejection of the sale was patently unreasonable.

Moreover, not only did BKC provide contractually invalid justifications for refusing to consent to the sale, BKC's rejection of the sale was made in bad faith and was part and parcel of BKC's scheme and plan to retake the Subject Restaurants, which lay on real estate owned by BKC, without having to pay any consideration to AEI. Therefore, AEI has properly set forth a prima facie case of tortious interference by BKC. Accordingly, BKC's Motion with respect to AEI's claims for tortious interference must be denied.

C. **Count IV - Violation Of The Florida Unfair and Deceptive Trade Practices Act (The "Little FTC Act" or "FUDTPA).**

1. **AEI Is A "Consumer" And Therefore Has Standing To Bring A Claim Under the FUDTPA.**

BKC further contends that AEI cannot maintain a claim under the FDUTPA, because AEI, as a sophisticated business entity, cannot be considered a "consumer" as defined in the Act. Motion, p. 6. BKC's argument is without merit. In fact, BKC misstates the law as it currently exists in the State of Florida.

Florida's Unfair and Deceptive Trade Practices Act does not distinguish between those entitled to protection under the Act based on their levels of sophistication. Typically, Little FTC Acts are interpreted broadly in franchise and other contexts to include virtually any conduct that could be described as unfair or deceptive. Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, Business Franchise Guide (CCH) ¶ 11,099 (Conn. Super. Ct. 1997) ("The Connecticut Unfair Trade Practices Act is a remedial statute enacted to foster honesty and full disclosure in the

conduct of business. This statute has been interpreted broadly by Connecticut courts." Id. at 29,096); Century 21 Real Estate Corp. v. Hometown Real Estate Co., Business Franchise Guide (CCH) ¶ 10,619 (Tex. Ct. App. 1994) (franchisor's inadvertent but unconscionable breach of unwritten policy regarding franchise expansion constituted violation of Texas Little FTC Act); Nieman v. Dryclean U.S.A. Franchise Co., No. 95-1390-CIV-WDF (S.D. Fla. Mar. 26, 1997) (District Court rejected defendant's argument that plaintiff lacked standing to bring a suit under Florida's Little FTC Act since plaintiff was a sophisticated businessman, not a consumer).

AEI is clearly a "consumer," as the term is defined in the Act. Cummings v. Warren Henry Motors, Inc., 648 So. 2d 1230, 1233 (Fla. 4th DCA 1995) (the Florida legislature intended chapter 501, "Florida Deceptive and Unfair Trade Practices Act," to be construed liberally. See § 501.202 (the provisions of this part shall be construed liberally to promote the following policies: (1) to simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices)). However, BKC also claims that the franchisor/franchisee relationship between BKC and AEI and the transactions being sued upon do not constitute a "consumer transaction." In support of its position, BKC relies on the case of Hardee's Food System., Inc. v. Bennett, 1994 WL 1372628 (S.D. Fla. 1994) for the proposition that a franchisee's claim against a franchisor in connection with the purchase of a franchise is not a consumer transaction. From this case, BKC claims that the cases are "legion" that the sale of a franchise is not a "consumer transaction." However, BKC's reliance on Hardee's misstates the law as it currently exists in the State of Florida.

In Hardee's, the court relied on the 1993 definition of "consumer transaction" to hold that Defendants had not violated the FUDTPA. Id. at *6. At the time, the statute limited the definition of "consumer transaction" to business opportunities that required both the party's "expenditure of

money or property" and opportunities "in which [the party] has not been previously engaged." Id; Fla. Stat. § 501.203 (1993). At the time, courts held that the purpose of the Act was to "protect the unwary from being 'conned' into investing in unsound, fly-by-night business ventures." Id. (quoting Black v. Department of Legal Affairs, 353 So. 2d 655, 656 (Fla. 2d DCA 1977). Thus, because the plaintiffs in Hardee's did not expend any money on the deal, and since they had previous experience in the franchise business, the Court granted summary judgment.

However, the decision set forth by the Court in Hardee's is no longer applicable.[5] Section 501.203(1)'s original definition of "consumer transaction," and the requirement of a naive or "unwary" purchaser, was deleted from that section in 1993. In 1993, the Florida Legislature expanded the stated purpose of the Act to include "unfair methods of competition, and unconscionable, deceptive, and unfair trade practice," as part of the protection consumers were afforded under the Act, and replaced the term and pre-1993 definition of "consumer transaction" with the term "trade and commerce." The term "trade and commerce," which, although similar to pre-1993 amendment definition of "consumer transaction," eliminated the requirement that the item

---

[5] Plaintiff's reliance on J & R Ice Cream Corp. v. California Smoothie Licensing Corp. is similarly misplaced. In J & R, the Third Circuit applied the New Jersey Consumer Fraud Act and determined that the plaintiff franchisee did not constitute a "consumer" for purposes of the Act. 31 F.3d 1259, 1272 (3d Cir. 1994). However, like the old version of the FUDTPA, the New Jersey Act is intended to prevent "unlawful...practices designed to induce customers to purchase merchandise...." Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 568 (N.J. 1978). Thus, the language of the New Jersey Act mirrors the old language of the FUDTPA. Therefore, Plaintiff cannot rely on the J & R decision to support its Motion. It is also important to note that the Court decided J & R despite the fact that the only state case that had directly addressed the issue held that the term "franchise" is included within the Act's definition of "merchandise." Morgan v. Air Brook Limousine, Inc., 510 A.2d 1197, 1204 (N.J. Law Div. 1986). Similarly, Pennsylvania's "Little FTC Act"and Louisiana's Unfair Trade Practices anc Consumer Protection Law mirror the language of the old version of the FUDTPA. Sol Lorenzo d/b/a Lords Valley Real Estate v. Electronic Realty Associates, L.P., Bus. Franch. Guide (CCH) ¶ 10,886 (M.D. Pa. Jan. 17, 1996); Louisiana Revised Statutes 51:1402 (West 2001).

10

be for "purposes that are primarily personal, family, or household, ... or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged." See Fla. Stat. § 501.203(8) and Historical and Statutory Notes. In fact, in Nieman v. Dryclean U.S.A. Franchise Co., this Court applied the new definition of the FUDTPA and held that a franchisee had standing to sue a franchisor under the Act. No. 95-1390-CIV-WDF (S.D. Fla. Mar. 26, 1997); overruled on other grounds, 178 F.3d 1126, 1128 (11th Cir. 1126). Therefore, under the current version of the Act, Defendants are "consumers" and engaged in a "consumer transaction." Thus, Plaintiff's Motion should be denied.

Further, BKC's contention is clearly at odds with the liberality required in applying the Little FTC Act. BKC does not even address its conduct as it relates to the asserted violations of the Act. Instead, BKC simply focuses on the words ("consumer" and "consumer transaction") used to describe those facts. In Day v. Le-Jo Enterprises, Inc., 521 So. 2d 175 (Fla. 3d DCA 1988), the manufacturer brought suit against distributors for breach of a distribution agreement, and defendants filed a counterclaim for illegal tying, unfair and deceptive trade practices, and fraudulent misrepresentations. The trial court granted the manufacturer a directed verdict on the counterclaims, and a jury found for the manufacturer on the breach of contract claim. On appeal, the 3d DCA held that the record, which demonstrated that the manufacturer deliberately misled the distributor into making extraterritorial sales, and then used such sales as pretext for terminating distributor's contract, was sufficient to create a jury question as to whether the manufacturer had practiced unfair and deceptive trade practices. Id. at 178. The 3d DCA stated as follows:

> In considering whether the evidence of whether manufacturers actions would support a finding of unfair and deceptive practices, we note that the court in Urling v. Helms Exterminators, Inc., 468 So. 2d 451 (Fla. 1st DCA 1985), found the concept of

"unfair and deceptive" to be extremely broad. It cited to the federal case of <u>Spiegel, Inc. v. Federal Trade Comm'n</u>, 540 F.2d 287, 293 (7th Cir. 1976), for the proposition that "a practice is unfair" under the Federal Trade Commission Act, 15 U.S.C.A. § 45(a)(1), when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumer," (or competitors or other businessmen). 540 F.2d at 293 n. 8.

<u>Id</u>.

Here, AEI has alleged that BKC engages in a systematic practice of interfering with franchise sales throughout its franchise system in order to further its own economic interests. In particular, AEI alleges that BKC rejected AEI's proposed sale to RII in order to force AEI to relinquish its restaurants to BKC without receiving any consideration for the Subject Restaurants. BKC's conduct was "substantially injurious" to AEI. Accordingly, this Court should deny BKC's Motion to Dismiss as to AEI's claim for violation of the Florida Unfair and Deceptive Trade Practices Act.

### D. BKC's Motion to Dismiss on Identical Grounds in a Similar Case Has Been Rejected by This Court

In a case currently pending before this Court with similar factual circumstances to the one at bar, BKC filed a Motion to Dismiss on grounds identical to the instant Motion. <u>Burger King Corp. v. H&H Restaurants, LLC, et al.</u>, Case No. 99-2855 CIV JORDAN. A copy of BKC's Motion to Dismiss in the <u>H&H</u> case and this Court's denial of BKC's Motion are annexed hereto as Exhibits "B" and "C," respectively.[6] Defendants submit that denial of BKC's Motion to Dismiss is equally appropriate here.

### CONCLUSION

For the foregoing reasons, Defendants, ASHLAND EQUITIES, INC., REINOLD T.

---

[6] A Motion for Summary Judgment is pending before Judge Jordan in the <u>H&H</u> matter.

12

BELLE, and ROBERT E. CLARKE, respectfully request that this Court enter an Order denying Plaintiff, BURGER KING CORPORATION's, Motion to Dismiss and granting Defendants such other and further relief that this Court deems proper.

Respectfully submitted,

ZARCO & PARDO, P.A.
Bank of America Tower at Int'l Place
100 S.E. 2nd. Street, 27th floor
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

BY: _____
ROBERT ZARCO
Florida Bar No. 502138
ROBERT M. EINHORN
Florida Bar No. 858188
JUDE C. COOPER
Florida Bar No. 0366160

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent U.S. Mail this 19th day of March, 2001 to Michael D. Joblove, Esq., GENOVESE LICHTMAN JOBLOVE AND BATTISTA, P.A., 100 SE 2nd Street, 36th Floor, Miami, FL 33131.

By: _____
ROBERT M. EINHORN