UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 00-1804-CIV-GOLD

BURGER KING CORPORATION,

    Plaintiff,

vs.

ASHLAND EQUITIES, INC.,
REINOLD T. BELLE, and
ROBERT E. CLARKE

    Defendants.
_____/

**PLAINTIFF BURGER KING CORPORATION'S MOTION FOR
RECONSIDERATION OF THIS COURT'S AUGUST 17, 2001
ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIM AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff Burger King Corporation ("BKC") submits this Motion for Reconsideration of this Court's Order on Plaintiff's Motion to Dismiss Defendants' Counterclaim ("Dismissal Order") and supporting memorandum of law.

## I. INTRODUCTION

BKC seeks reconsideration of this Court's August 17, 2001 Order denying its motion to dismiss Defendants tortious interference counterclaim. Just days prior to the Order the Eleventh Circuit published its opinion in Ernie Haine Ford, Inc. v. Ford Motor Co., 14 Fla. L. Weekly Fed. C 1077, 2001 U.S. App. LEXIS 17693 (11th Cir. August 8, 2001), which demonstrates that the claim must be dismissed. The published opinion in Ford is precedent, as opposed to the Eleventh Circuit's unpublished opinion in KMS Rest. Corp. v. Wendy's Int'l, Inc., No. 98-5336 (11th Cir. Feb. 2, 2000), upon which this Court relied in its order denying dismissal of the tortious interference claim

because, unpublished opinions are of no precedential value. <u>United States v. Mejia</u>, 154 F. 3d 1297, n.1 (11th Cir. 1998)(unpublished opinions of the United States Court of Appeal for the Eleventh Circuit are non-binding precedent).

## II. BACKGROUND

Defendants-Counterclaimants alleged as their tortious interference claim that BKC exercised its contractual right to disapprove a proposed sale of Defendants' BKC franchised restaurants "maliciously" "for the purpose of furthering its own financial interests." (Countercl. at ¶31; Dismissal Order at 10). This Court denied the portion of BKC's motion to dismiss directed to the tortious interference claim and held that "Defendants have sufficiently stated a claim for tortious interference with contractual relations by alleging that BKC's conduct went beyond the limited scope of the privilege to interfere, in that BKC maliciously denied their application for franchise sale approval in order to retake the franchisee restaurants." (Dismissal Order at 11). The Court followed an unpublished Eleventh Circuit decision which held, contrary to prior Florida state court decisions and decisions of this Court, that a claim for tortious interference may be stated against a party who withheld its required consent, merely by alleging that such consent was withheld in part for an improper purpose. (Dismissal Order at 10-11 (citing <u>KMS Rest. Corp. v. Wendy's Int'l, Inc.</u>, No. 98-5336 (11th Cir., Feb. 2, 2000)(unpublished)).

On August 8, 2001, days prior to this Court's denial of BKC's motion to dismiss, the Eleventh Circuit decided and later published, <u>Ernie Haire Ford, Inc. v. Ford Motor Co.</u>, 14 Fla. L. Weekly Fed. C 1077, 2001 U.S. App. Lexis 17693 (11th Cir. Aug. 8, 2001), a copy of which is attached hereto as Exhibit "A." In <u>Ford</u>, the Eleventh Circuit reconfirmed the validity of the Florida state court decisions cited by BKC, including <u>Genet Co. v. AnnHeuser-Busch, Inc.</u>, 498 So. 2d 683, 684 (Fla. Dist. Ct. App. 1986); <u>Ethyl v. Balter</u>, 386 So. 2d 1220, 1225 (Fla. Dist. Ct. App. 1980);

2

Salit v. Ruden McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999); and Abruzzo v. Haller, 603 So. 2d 1338 (Fla. Dist. Ct. App. 1992), and held, consistent with this Court's prior decisions, that as a matter of law, because a franchisor is never a third party to a franchisee's contract for sale of a franchise, a franchisee cannot state a tortious interference claim against a franchisor for its refusal to consent to a sale of the franchise. Id. at *19-22. Additionally, the court noted that a completely separate, additional ground required summary judgment for the franchisor due to the franchisor's absolute privilege to act, so long as its purpose was in some part to further its own financial interest. Id. at 21 n. 9. The Eleventh Circuit's Ford decision thus abrogated the unpublished KMS decision and made plain that the Defendants in this case have failed to plead a valid claim for tortious interference.

Because the intervening and controlling Ford decision requires dismissal of Defendants' tortious interference claim, this Court should grant BKC's motion for reconsideration and dismiss that claim.

### III. DISCUSSION

#### A.   The Standard for Granting a Motion for Reconsideration

It has long been acknowledged that "[a] motion for reconsideration must demonstrate why a court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" Florida College of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc., 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998) (citation omitted). Courts have recognized three grounds justifying relief: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. Id. (citation omitted) ; see also Z.K. Marine, Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) ("A further basis for a motion to reconsider would be a controlling or significant change in the law

3

or facts since the submission of the issue to the Court").

The August 2001 opinion of the Eleventh Circuit, Ernie Haire Ford, Inc. v. Ford Motor Company, 14 Fla. L. Weekly Fed. C 1077, 2001 U.S. App. LEXIS 17693 (11th Cir. Aug. 8, 2001), presents an intervening change in the law abrogating the very Eleventh Circuit decision this Court relied upon in denying BKC's Motion to Dismiss. Failure to follow the Ford decision, moreover, would constitute clear error. Clearly, sufficient grounds for reconsideration exist.

### B. The Eleventh Circuit's August 2001 Ford Decision Requires Dismissal of Defendants' Tortious Interference Claim

BKC submits the August 8, 2001 published opinion of the Eleventh Circuit, Ernie Haire Ford, Inc. v. Ford Motor Company, 14 Fla. L. Weekly Fed. C 1077, 2001 U.S. App. LEXIS 17693 (11th Cir. Aug. 8, 2001), in support of its motion for reconsideration. The Eleventh Circuit's precedent is directly on point and controlling. As noted, the unpublished KMS decision abrogated by Ford, was never binding authority. See United States v. Mejia, 154 F.3d 1297 n.1 (11th Cir. 1998) (unpublished opinions of the United States Court of Appeals for the Eleventh Circuit are non-binding precedent).

In Ford, a Ford franchisee sued Ford for breach of contract, breach of implied covenant of good faith, and tortious interference, based upon Ford's refusal to consent to its franchisee's proposed sale and relocation of its Ford franchise to Car Max. The franchise agreement expressly required the franchisor's consent as a condition precedent to any transfer. Id. at *20-21.

The Eleventh Circuit held that the franchisee's tortious interference claim was impermissible as a matter of law due to the fact that the franchise agreement expressly gave the franchisor the right to disapprove the transfer, and that the franchisor consequently was not a third party to the transaction with which it allegedly interfered as required to state such a claim:

4

> Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. . . . In other words, "the interfering defendant must be a third party, a stranger to the business relationship."
>
> Genet, decided by the Florida Third District Court of Appeal, is materially indistinguishable from the instant case. In Genet, the owner of an Anheuser-Busch (A-B) wholesalership contracted with the plaintiffs to sell his wholesalership. The sales contract between the owner and the plaintiffs was expressly conditioned on A-B's approval. Additionally, the equity agreement between A-B and the owner required approval for any sale of the wholesalership. A-B disapproved the sale to the plaintiffs. In affirming a grant of summary judgment to A-B, the Third District Court of Appeal reasoned, "Because plaintiffs' agreement with the owner was specifically conditioned upon A-B's approval, as a matter of law, A-B cannot be liable for tortious interference with their agreement." Moreover, in support of its holding, the court emphasized that A-B was not a disinterested third-party, as it had a contractual right in the equity agreement to disapprove any proposed transfer.
>
> All the material facts from Genet are present in this case. Just as the sales agreement in Genet was conditioned on A-B's approval, the transfer and relocation agreement here was expressly conditioned on Appellee's approval. Furthermore, just as the equity agreement in Genet gave A-B the power to disapprove a sale, the Dealership Agreement here gave Appellee the power to disapprove a transfer or relocation. Therefore, pursuant to Genet, the district court properly granted Appellee summary judgment on Appellants' tortious interference claims.

Id. at 20-21 (citing Genet v. Annheuser-Busch, 498 So. 2d at 683-84; Ethyl v. Balter, 386 So. 2d at 1225; Salit v. Ruden McClosky, 742 So. 2d at 386) (footnote omitted).

In addition to its holding that a franchisee cannot assert a tortious interference claim against its franchisor for withholding its consent to a proposed transfer, the Eleventh Circuit in Ford stated in a footnote that an entirely separate ground for dismissal also existed because the franchisor was

5

privileged to interfere.¹ Id. at *21 n. 9; see also Ethyl v. Balter, 386 So. 2d at 1225 (Ethyl's privilege to interfere provided "a completely separate, additional, and overriding reason which precludes Ethyl's liability for interference"); Genet, 498 So. 2d at 684 (same). The Eleventh Circuit rejected the franchisee's argument that the privilege to interfere "is qualified and does not apply where a party purposefully interferes or acts egregiously." Id. Rather, the court held that the privilege becomes qualified only if the "sole basis for disapproving the transaction was malicious." Id. Because it was disputed that Ford would benefit financially from its disapproval of the proposed franchise transfer, Ford's actions were unqualifiedly privileged. Id.

This case is indistinguishable from Ford. As in Ford, Defendants acknowledge that their franchise agreements with BKC made the sale of the subject restaurants subject to BKC's consent. As Ford, Genet, and the other cases cited make plain, because BKC's consent was required, it was a party to Defendants' proposed sales transaction, and no valid tortious interference claim can be stated against it.

Also like Ford, here, BKC's decision was similarly made to benefit its own financial interest. Indeed, the only reason Defendants plead for BKC's withholding of consent is that it was "for the purpose of furthering its own financial interests." (Countercl. ¶ 31). As Ford makes plain, because BKC's reasons for interference included to advance its own financial interest, the privilege to interfere was unqualified.² Id.

---

    ¹     Because the privilege issue only comes into play if the defendant is a stranger to the business relationship, that issue need not be decided by this Court.

    ²     The holding in Ford thus directly abrogates the unpublished KMS court's decision that a franchisee could state a tortious interference claim against a franchisor who refused to consent to a transfer and that the privilege issue in such cases is one of fact so long as it is alleged that one of the franchisor's purposes was malice.

6

## IV. CONCLUSION

For all of the foregoing reasons, BKC's motion for reconsideration should be granted and Count III of Defendants' counterclaim dismissed.

WHEREFORE, Burger King Corporation respectfully requests that this Court enter an Order granting this Motion for Reconsideration and dismissing with prejudice Defendants' tortious interference claim in Count III of their Counterclaim.

> GENOVESE LICHTMAN JOBLOVE & BATTISTA
> Attorneys for Burger King Corporation
> Bank of America Tower, 36th Floor
> 100 Southeast Second Street
> Miami, Florida 33131
> Telephone: (305) 349-2300
> Facsimile: (305) 349-2310
>
> By _____
> Michael D. Joblove
> Florida Bar Number 354147
> Jonathan E. Perlman
> Florida Bar Number 773328
> Nina Greene Kersh
> Florida Bar Number 072079

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY THAT a true and correct copy of the foregoing was served via U.S. mail this 31st day of August, 2001, upon Robert M. Einhorn, Esq., Zarco & Pardo, 100 Southeast Second Street, 27th Floor, Miami, Florida 33131.

_____
Of Counsel

X:\Documents\WORK\BK\Belle\Pleadings\ReconsiderationMotion.wpd

7

LEXSEE 2001 us app lexis 17693

**ERNIE HAIRE FORD, INC., Auto Assets Trust, Mary K. Haire, individually and as trustee of the Ernest B. Haire, Jr., Revocable Trust, Ernest B. Haire, III, Plaintiffs-Appellants, v. FORD MOTOR COMPANY, Defendant-Appellee.**

No. 00-14701.

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

*2001 U.S. App. LEXIS 17693; 14 Fla. L. Weekly Fed. C 1077*

August 8, 2001, Decided

August 8, 2001, Filed

**PRIOR HISTORY:**
*1 Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 99-00059 CV-T-25F. Judge: Henry Lee Adams Jr.

**DISPOSITION:**
AFFIRMED.

**COUNSEL:**
For Ernie Haire Ford, Inc., Auto Assets Trust, Mary K. Haire, Ernest B. Haire, III, Appellants: John Joseph Agliano, Williams Schifino Mangione & Steady, P.A., Tampa, FL.

For Ford Motor Company, Appellee: J.D. Fleming, Jr., Sutherlan, Asbill & Brennan, Atlanta, GA.

**JUDGES:**
Before BLACK and BARKETT, Circuit Judges, and TIDWELL *, District Judge.

> * Honorable G. Ernest Tidwell, U.S. District Judge for the Northern District of Georgia, sitting by designation.

**OPINIONBY:**
BLACK

**OPINION:**

BLACK, Circuit Judge:

Appellee Ford Motor Company distributes its automobiles through a nationwide network of independently-owned dealerships. Appellants Mary Haire and Ernest B. Haire, III (the Haires) are shareholders of Ernie Haire Ford, Inc. (EHF), an automobile dealership located in Tampa, Florida. n1 Appellant Auto Assets Trust (Auto Assets) was to serve as a broker in a proposed transaction. Appellants claim Appellee is liable, under Florida law, for its refusal to approve the proposed transaction. The district court granted summary judgment to Appellee. We affirm.

> n1 Mary K. Haire is a shareholder both in her individual capacity and in her capacity as trustee of the Ernie B. Haire, Jr. Trust.

*2

1. BACKGROUND

We set forth the facts in the light most favorable to Appellants. On March 31, 1985, Appellant EHF and Appellee entered in a Ford Sales and Service Agreement (Dealership Agreement), which was amended on January 5, 1994. On September 5, 1996, EHF and Appellee executed a Dealer's Facility Supplement (Supplement). The Dealership Agreement and the Supplement contain three provisions pertinent to this case.

First, section 5(b) of the Dealership Agreement states that the dealership location is described in the Supplement, which in turn specifies two addresses on North Florida Avenue in Tampa as the location for EHF's dealership. Second, section 5(c) in the Dealership Agreement provides in part:

EHF *shall not move* or substantially modify or change the usage of any of the DEALERSHIP LOCATION or FACILITIES ..., nor shall EHF ... directly or indirectly establish or operate in whole or in part any other locations or facilities ... *without the prior written consent of Appellee.* (emphasis added)

Third, section 9(a) in the Dealership Agreement provides:

Appellee reserves the right to determine, from time to time, in *its best* *3 *judgment,* the numbers, *locations* and sizes of authorized dealers necessary for proper and

EXHIBIT A

satisfactory sales and service representation ... within and without the DEALER'S LOCALITY. In making such determinations, Appellee from time to time conducts, to the extent deemed adequate by Appellee and subject to the ready availability of information, studies of the locality, including such factors as geographic characteristics, consumer shopping habits, competitive representation patterns, etc. .... (emphasis added).

Throughout 1997 and 1998, EHF negotiated a transfer of its dealership to CarMax, a non-party. Under the proposed transaction, the Haires would sell their shares in EHF to Auto Assets, which in turn would sell EHF's operating assets, including the Dealership Agreement, to CarMax. The proposed transaction also called for the relocation of the dealership from North Florida Avenue to CarMax's superstore on Bearss Avenue. The transaction was conditioned on Appellee's approval of both the transfer and relocation of the dealership.

In October 1998, EHF requested Appellee's approval for the proposed transaction, including the transfer of the dealership to *4 CarMax and the relocation to Bearss Avenue. In December 1998, Appellee disapproved the relocation to Bearss Avenue, and because the transfer was conditioned on the relocation, Appellee also disapproved the transfer to CarMax. Contemporaneously, to ensure the transaction would not be consummated, Appellee filed a verified complaint with Department of Highway Safety and Motor Vehicles (DHSMV) pursuant to Fla. Stat. § 320.643; the sole basis for Appellee's verified complaint was its objection to the proposed relocation. Shortly thereafter, CarMax terminated the proposed transaction, and the DHSMV dismissed the verified complaint as moot.

In their lawsuit before the district court, Appellants presented a plethora of evidence about Appellee's motive for rejecting the proposed transaction. For instance, as early as the late 1970s or early 1980s, and then again in late 1995 or early 1996, Appellee had suggested that EHF's dealership be moved to Bearss Avenue. Nevertheless, in early 1998, Appellee tried to persuade Appellants not to transfer the dealership to CarMax, despite admitting that the Bearss Avenue location had several advantages over the North Florida Avenue location. At an August *5 1998 meeting, Appellee informed CarMax that it would not approve the transaction even if CarMax offered to operate the dealership at the North Florida Avenue location. Prior to rejecting the transaction, Appellee performed a limited amount of due diligence; in particular, Appellee requested far less information from CarMax than it normally requested from other proposed transferees. Additionally, had Appellee adhered to its own relocation manual, nine of the ten factors listed therein favored the Bearss Avenue location.

Appellee presented evidence of several reasons supporting its refusal to approve the relocation and transfer. For example, the proposed relocation conflicted with Appellee's market plan, which encompassed placing a new dealership in a different area of Tampa. Moreover, Appellee did not want to move EHF from the "auto row" on North Florida Avenue, and it believed the Bearss Avenue location was near some undesirable businesses. Additionally, Appellee feared the relocation would generate protest litigation by other dealerships pursuant to Fla. Stat. § 320.642. Lastly, Appellee did not want EHF's new-car dealership co-located with CarMax's used-car superstore.

## II. STANDARD *6 OF REVIEW

We review a grant of summary judgment de novo, with all facts and reasonable inferences construed in the light most favorable to the nonmoving party. *See, e.g., Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998).* This case requires us to examine issues concerning the substantive law of Florida. In rendering a decision based on state substantive law, a federal court must "decide the case the way it appears the state's highest court would." *E.g., Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001)* (internal quotations and citation omitted). Where the state's highest court has not spoken to an issue, a federal court "must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991)* (internal quotations omitted).

## III. DISCUSSION

Appellants claim Appellee is liable, under Florida law, for (1) a breach of contract, (2) a violation of Fla. Stat. § 320.643 (1997), and (3) tortious interference with contract. *7 We examine each of these contentions. n2

> n2 Appellants also contend the district court improvidently granted summary judgment because there was a pending discovery dispute. We conclude the district court did not abuse its discretion, as the discovery requested by Appellants was unlikely to produce a genuine issue of material fact. *See, e.g., Patterson v. U.S. Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990).*

A. *Breach of Contract*

To support their breach of contract claims, n3 Appellants make two arguments. First, they argue that Appellee did not use "its best judgment," contrary to section 9(a) of the Dealership Agreement, when it rejected the relocation and the transfer of the dealership. Second, Appellants argue Appellee violated the implied covenant of good faith and fair dealing.

> n3 Appellants' complaint contains two claims for breach of contract, one on behalf of EHF and one on behalf of the Haires. The district court rejected the Haires' claim on the ground that they were not parties to the Dealership Agreement and were not entitled to relief as third-party beneficiaries. Since we conclude there was no underlying breach of contract, we need not address whether the Haires had standing to sue under the Dealership Agreement.

*8

For their first argument, Appellants concede that, under sections 5(b) & (c) of the Dealership Agreement, any relocation of the dealership from its North Florida Avenue location required Appellee's written consent. Appellants nonetheless argue that the "best judgment" clause of section 9(a) modified Appellee's discretion when approving or rejecting a proposed relocation. To comply with "best judgment" clause, Appellants say that Appellee was required to "gather sufficient information and perform an analysis to have a proper basis to exercise its 'best judgment' and at least follow its own guidelines and procedures." Appellant's Br. 24. Whether Appellee did this, Appellants argue, is a question of fact for the jury.

We disagree. As the district court noted, it is well settled that "when the terms of a voluntary contract are clear and unambiguous, ... the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995); accord Institutional & SuperMarket Equip., Inc. v. C & S Refrigeration, Inc., 609 So. 2d 66, 68 (Fla. 4th DCA 1992);* \*9 *Nat'l Health Labs., Inc. v. Bailmar, Inc., 444 So. 2d 1078, 1080 (Fla. 3d DCA 1984).* The district court correctly characterized the plain meaning of the Dealership Agreement and section 9(a):

Under the Dealership Agreement, it is Appellee's *own* judgment that controls, not EHF's judgment, not a jury's judgment and not a reasonable business person's judgment. Section 9(a) merely requires that Appellee use *its* best judgment in determining the relocation of its dealerships. This clear and unambiguous provision cannot be interpreted as opening the door for a jury to second-guess Appellee's judgment or as setting limits on Appellee's reasons for making a relocation determination.

Turning to Appellants' second argument, the implied covenant of good faith and fair dealing is a part of every contract under Florida law. *See Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir.), cert. dismissed 528 U.S. 948, 120 S. Ct. 370, 145 L. Ed. 2d 287 (1999).* But the implied covenant cannot override an express contractual term. *See Ins. Concepts and Design, Inc. v. HealthPlan Servs., Inc., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001)* \*10 (citing *Weaver, 169 F.3d at 1317-18).* Rather than serving as an independent term within a contract, the implied covenant "attaches ... to the performance of a specific contractual obligation." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1314 (11th Cir. 1998)* (quoted in *Ins. Concepts, 785 So. 2d at 1235).* In this case, the specific contractual obligation upon which Appellants rely is section 9(a)'s "best judgment" clause; therefore, the proper inquiry is to what extent, if any, does the implied covenant modify the broad discretion accorded Appellee under the "best judgment" clause.

With the implied covenant, one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations. *See Sepe v. City of Safety Harbor, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)* (holding that, even where one party has "sole discretion" under a contract, that party, in exercising its discretion, must act in good-faith and in accordance with the contracting parties' expectations); *Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999)* \*11 (stating "where the terms of the contract afford a party substantial discretion ..., the duty to act in good faith ... limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party"). Yet, the limit placed on a party's discretion is not great. As the Florida Second District Court of Appeal has stated, "Unless no reasonable party ... would have made the same discretionary decision ..., it seems unlikely that the party's decision would violate the covenant of good faith...." *Sepe, 761 So. 2d at 1185.*

According to Appellants, the *Cox* decision by the Florida First District Court of Appeal controls the outcome of this case. *732 So. 2d at 1094-1099.* In *Cox,* two truckers contracted with CSX to haul freight. *See id. at 1094.* CSX had exclusive rights to the truckers' services, thereby prohibiting the truckers from hauling non-CSX freight. *See id.* But the contract expressly stated CSX had no obligation to provide any specific freight to the

truckers. *See id.* The truckers sued for breach of contract, claiming CSX was routinely giving them only low-paying freight *12 to haul. *See id.* CSX argued that the contract gave it complete discretion in the assignment of freight, and it was under no obligation to assign any freight to the truckers. Notwithstanding CSX's broad discretion under the contract, the First District Court of Appeal reversed a summary judgment, holding that issues of fact remained as to whether CSX had acted in good faith in assigning freight. *See id. at 1097-98.*

Appellants' reliance on *Cox* is misplaced. The central purpose of the contract in *Cox* was the hauling of freight. By failing to assign freight, CSX frustrated that purpose and the reasonable expectations of the parties. Here, however, the central purpose of the Dealership Agreement was to sell cars, not to relocate the dealership. In disapproving the relocation, Appellee did not preclude Appellants from selling cars. Instead, based on "its best judgment," Appellee forbid the relocation of the dealership to a site where, granted, Appellants would have financially benefitted. Although Appellee's decision was not in Appellants' best interests, it was neither capricious nor in contravention of the parties' reasonable expectations. Therefore, the district *13 court properly granted summary judgement on Appellants' breach of contract claims.

B. *Fla. Stat. § 320.643 (1997)* n4

> n4 The events in this case are governed by the 1997 version of the Florida Statutes, and all references herein are to the 1997 version. Section 320.643 was amended by Fla. Laws ch.2001-196, which was signed into law by the Governor of Florida on June 8, 2001. Those amendments, however, do not govern in this case. *Cf. Barry Cook Ford, Inc. v. Ford Motor Co., 616 So. 2d 512, 517 n.5 (1st DCA 1993).*

Section 320.697 of the Florida Statutes provides a cause of action to "any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of Fla. Stat. §§ 320.60-320.70." Appellants contend that Appellee, a licensee, n5 is liable under § 320.697 for violating Fla. Stat. § 320.643.

> n5 A licensee is an automobile manufacturer, distributor, or importer. *See* Fla. Stat. §§ 320.60(8), 320.61; *see also Mercedes-Benz of N. Am. v. Mike Smith Pontiac GMC, Inc., 561 So. 2d 620, 623 n.5 (Fla. 1st DCA 1990).* The parties do not dispute that Appellee qualifies as a licensee.

*14

We recently explained how § 320.643 functions:

Section 320.643 provides a mechanism to regulate the transfer of dealer franchise agreements and equity interests. A licensee ... is entitled to written notice of any such transfer. To object to the transfer, a licensee must file a verified complaint with the DHSMV no later than 60 days after receiving notice. The available grounds for objection differ depending on the type of transfer. For a transfer of a franchise agreement, a licensee, under § 320.643(1), may not unreasonably withhold its approval, and all objections to the transfer—other than objections to the transferee's moral character or business experience—are presumed to be unreasonable. In contrast, for a transfer of the equity interest, a licensee, under § 320.643(2)(a), may object solely on the ground that the transferee lacks good moral character. n6

*Risley v. Nissan Motor Corp. USA, 254 F.3d 1296, 1299 (11th Cir.2001).* What we did not mention in *Risley,* as it was not pertinent there, is that a transfer of a franchise agreement is not valid "unless the transferee agrees in writing to comply with all requirements of the *15 franchise then in effect." Fla. Stat. § 320.643(1).

> n6 Recent amendments have altered § 320.643's procedural mechanism, but those amendments do not govern in this case. *See* Fla. Laws ch. 2001-196, § 23; *supra* note 4.

In this case, Appellants were proposing both a transfer of EHF's equity interest (that is, the sale of EHF's stock from the Haires to Auto Assets) and a transfer of the EHF's franchise agreement (that is, the transfer of EHF's operating assets from Auto Assets to CarMax). Appellee disapproved the entire transaction because it was conditioned on the relocation of the dealership from North Florida Avenue to Bearss Avenue. Appellants contend this disapproval violated both § 320.643(1), which governs transfers of franchise agreements, and § 320.643(2)(a), which governs transfers of equity interests.

Appellants' claims under § 320.643(1) are foreclosed by *Gus Machado Buick-GMC Truck, Inc. v. General Motors Corp., 623 So. 2d 810 (Fla. 1st DCA 1993).* In that case, an automobile *16 dealer proposed a transfer of the franchise agreement coupled with a relocation. *See id. at 811-12.* The licensee disapproved, contending, as Appellee does here, that the proposed transfer was invalid under Fla. Stat. § 320.643(1) because the relocation was a failure to comply with the franchise agreement. *See id.* Stated differently, the transferee refused to "comply with all requirements of the franchise

then in effect." Fla. Stat. § 320.643(1). In the administrative proceeding, the DHSMV agreed, and the Florida First District Court of Appeal affirmed, holding that a proposed franchise transfer which contemplates a relocation can fail to comply with the "franchise then in effect" and thus be invalidated by § 320.643(1). *See Gus Machado, 623 So. 2d at 812, 813.*

In this case, the "franchise then in effect" (that is, the Dealership Agreement) plainly articulated that EHF's dealership had to be located at North Florida Avenue. Appellants' proposed transaction did not comply with this requirement, and thus it was invalid under § 320.643(1). Hence, Appellee could not have violated § 320.643(1) when it disapproved a transaction which, by its plain *17 terms, was invalid under § 320.643(1). n7

> n7 Appellants argue we should not follow *Gus Machado* because the First District Court of Appeal was required, under Florida law, to defer to the statutory construction of the agency (DHSMV) unless such construction was clearly erroneous. *623 So. 2d at 812* (citing *Braman Cadillac, Inc. v. Dep't of Highway Safety & Motor Vehicles, 584 So. 2d 1047, 1050 (Fla. 1st DCA 1991)).* But, if Florida courts must defer to agency interpretations when construing Florida substantive law, then we must do the same. *See supra* Part II.

Turning to Appellants' argument under § 320.643(2)(a), the Florida Supreme Court has recognized that where a proposed transaction is solely an equity transfer, then § 320.643(2)(a) may provide the exclusive basis for a licensee to disapprove the transaction. *See Hawkins v. Ford Motor Co., 748 So. 2d 993, 1000-01 (Fla. 1999).* Nonetheless, a proposed transaction "cannot be viewed in a vacuum." *Id. at 1001.* *18 Where a proposed transaction involves more than the "sterile transfer of an equity interest", then "§ 320.643(2)(a) does not provide the exclusive basis for objection." *Id.*

In this case, the proposed transfer of EHF's equity from the Haires to Auto Assets was inextricably intertwined with the transfer of EHF's franchise agreement from Auto Assets to CarMax. Thus, Appellee was free to disapprove the entire proposed transaction under either § 320.643(1) or § 320.643(2)(a). n8 Since it properly disapproved the transaction under § 320.643(1), Appellee could not have violated § 320.643(2)(a).

> n8 By contrast, in *Hawkins*, the proposed transaction involved a transfer of equity, but not a transfer of the franchise agreement, and therefore, the licensee could not rely on § 320.643(1) to block the proposed transaction. *748 So. 2d at 1002.* Here, however, the proposed transaction involved both a transfer of equity and a transfer of the franchise agreement.

In sum, as a matter of law, Appellee *19 did not violate § 320.643. Therefore, the district court properly granted Appellee summary judgment on Appellants' claims alleging a violation of § 320.643.

## C. *Tortious Interference with Contract*

Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. *Genet Co. v. Annheuser-Busch, Inc., 498 So. 2d 683, 684 (Fla. 3d DCA 1986)* (citing *Ethyl v. Balter, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980)).* In other words, "the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999)* (citing *Abruzzo v. Haller, 603 So. 2d 1338 (Fla. 1st DCA 1992)).*

*Genet*, decided by the Florida Third District Court of Appeal, is materially indistinguishable from the instant case. *498 So. 2d at 683-85.* In *Genet*, the owner of an Anheuser-Busch (A-B) wholesalership contracted with the plaintiffs to sell his wholesalership. *See id 498 So. 2d at 684.* The sales contract *20 between the owner and the plaintiffs was expressly conditioned on A-B's approval. *See id.* Additionally, the equity agreement between A-B and the owner required A-B's approval for any sale of the wholesalership. *See id.* A-B disapproved the sale to the plaintiffs. In affirming a grant of summary judgment to A-B, the Third District Court of Appeal reasoned, "Because plaintiffs' agreement with the owner was specifically conditioned upon A-B's approval, as a matter of law, A-B cannot be liable for tortious interference with their agreement." *Id.* Moreover, in support of its holding, the court emphasized that A-B was not a disinterested third-party, as it had a contractual right in the equity agreement to disapprove any proposed transfer. *See id.*

All the material facts from *Genet* are present in this case. Just as the sales agreement in *Genet* was conditioned on A-B's approval, the transfer and relocation agreement here was expressly conditioned on Appellee's approval. Furthermore, just as the equity agreement in *Genet* gave A-B the power to disapprove a sale, the Dealership Agreement here gave Appellee the power to disapprove a transfer or relocation. Therefore, *21 pursuant to *Genet*, the district court properly granted

Appellee summary judgment on Appellants' tortious interference claims. n9

> n9 Appellants argue that a party's privilege to interfere, pursuant to *Genet,* is qualified and does not apply where a party purposefully interferes or acts egregiously. *See Making Ends Meet, Inc. v. Cusick, 719 So. 2d 926, 928 (Fla. 3d DCA 1998)* (citing *McCurdy v. Collis, 508 So. 2d 380, 384 (Fla. 1st DCA 1987); Nizzo v. Amoco Oil Co., 333 So. 2d 491, 493 (Fla. 3d DCA 1976))*. Appellants' argument is misplaced. The privilege is qualified only where malice is the *sole* basis for the interference. *See McCurdy, 508 So. 2d at 383-84*. In other words, the party must be interfering *solely* out of spite, to do harm, or for some other bad motive. *See id. at 383 n.2; see also Nizzo, 333 So. 2d at 493* (upholding tortious interference claim where sole basis for defendant's interference was plaintiff's race). Appellants have failed to show that Appellee's sole basis for disapproving the transaction was malicious.
>
> Appellants also rely on our prior decision in *Frank Coulson, Inc.-Buick v. General Motors Corp., 488 F.2d 202 (5th Cir. 1974). See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)* (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981). However, compared to *Genet, Frank Coulson* is quite dissimilar from the instant case, and thus we are not bound by it. Furthermore, when *Frank Coulson* was decided, Florida law concerning the scope of a party's privilege to interfere had not yet crystallized. *488 F.2d at 206*. Since then, decisions such as *Genet* have better defined the contours of the privilege.

*22

### IV. CONCLUSION

In this case based on Florida law, Appellants contend that, by disapproving the relocation and transfer of their dealership, Appellee breached a contract, violated Fla. Stat. § 320.643, and tortiously interfered with a contract. We conclude otherwise. The district court correctly granted Appellee summary judgment on all claims.

AFFIRMED.